THE BOARD OF PRESIDENT AND DIRECTORS OF THE ST. LOUIS PUBLIC SCHOOLS, Appellants, *v.* DAVID R. RISLEY AND SARAH RISLEY, by her curator GEORGE D. HUMPHREYS, heirs of WILLIAM RISLEY, deceased, Respondents.

1. *Lands and Land Titles—Accessions—Riparian Rights.*—A lot in a town or village may be entitled to the riparian right of accretions, the right turning upon the question whether or no the lot had a front upon the river. See Jones v. Soulard, 24 How. 51; Smith v. Pub. Schools, 30 Mo. 301; LeBeau v. Gavin, 37 Mo. 556.

---

2. *Evidence—Tax Receipts—Hearsay—Limitations.*—Evidence as to the payment of taxes is admissible in suits for the possession of land for the purpose of showing adverse possession, or the extent and boundaries of the land possessed.

3. *Practice—Trials—Exceptions.*—Where objections are made to the admission of evidence, the bill of exceptions must show the reasons upon which the objections were founded.

4. *Practice— Trials — Evidence — Discretion. —* The Supreme Court will not review the discretion of the inferior court in admitting evidence out of its proper order.

5. *Evidence—Hearsay—Public Rights.*—Tradition, reputation and hearsay are admissible to prove the extent, character and existence of public rights as regards the location and boundaries of things of a public nature, as of a highway, street, or road.

### Appeal from St. Louis Circuit Court.

The court gave the following instructions on behalf of plaintiff:

2. The jury are instructed that the calls for the Mississippi river in the deeds or conveyances read in evidence from one private individual to another private individual, do not give or create riparian rights.

3. The eastern boundary line of the corporation of St. Louis, of 1809, read in evidence, and the eastern line of the out-boundary of December 8, 1840, read in evidence, both extend to the eastern boundary of the State of Missouri, which is the middle of the main channel of the Mississippi river.

4. If the jury believe from the evidence that a street, or tow-path, or passway, or other open space, was permanently established for the public use between the Mississippi river and the most eastern row of lots or blocks (of which block 44 was one) in the former town of St. Louis when said town was first laid out, or established, or founded, then and in that case the owner or claimant of said lots or blocks are not riparian proprietors of the land between said lots or blocks and said river.

5. If the jury believe from the evidence that a street, or tow-path, or passway, or other open space, was permanently established for the use of the public between the Mississippi

river and the most eastern row of lots or blocks (of which block 44 was one) in the former town of St. Louis when the town was first laid out, or established, or founded, and that the river after that time washed away the land so that the western edge or bank thereof was west of said road, or tow-path, or pathway, or other open space, and west of the eastern boundary line of said lots or blocks, and that afterwards the river receded so that the present western edge or bank thereof is no further west than when said town was first laid out, established or founded, the owners of said lots are not entitled to riparian rights.

6. If the jury believe from the evidence that a street, or tow-path, or passway, or other space, was permanently established for the public use between the Mississippi river and the most eastern row of lots or blocks (of which block 44 was one) as said town existed prior to December 20, 1803, then and in that case the owners or claimants of said lots or blocks are not riparian porprietors of the lands between said lots or blocks and the said river.

Plaintiff also asked the court to give the following instructions to the jury, which the court refused to give :

1. If the jury believe from the evidence that block 44 in the former town of St. Louis was, by a United States survey, surrounded on all sides by streets, and that said survey has from the time of the recording and approving of the same stood as an approved survey without appeal, the owners of the lot in said block thus surrounded are estopped from claiming any ground beyond the street which is by said survey made its eastern boundary.

2. The jury will find for the plaintiff if they believe from the evidence that all of the maps, plats, surveys, deeds, and other documents and instruments read in evidence by the plaintiff are genuine ; and that the premises in controversy are not within the boundaries of any land confirmed to any person or persons, but are within the boundaries of the corporation of 1809, read in evidence, and within the out-boundary of

December 8, 1840, read in evidence, and within the school assignment, being survey No. 400, read in evidence, and within the boundaries of the land described in the deed from the City of St. Louis to the plaintiff, read in evidence.

3. All streets, wharves, avenues, alleys, passways and other thoroughfares in towns and cities are presumed to have been established for the public use, and those who wish to show the contrary must prove it. If, therefore, the jury believe from the evidence that there was a street, tow-path, pathway, or other open space, in the former town of St. Louis, between the Mississippi river and the more eastern row of lots or blocks (of which block 44 was one), such street, tow-path or other space the jury will presume was established for the use of the public, and not affected, impaired or interfered with by riparian rights, unless the contrary be proved to their satisfaction.

4. If the jury believe from the evidence, that, in accordance with the plan of the former town of St. Louis, as the same was first laid out, established, or founded, there was between the most eastern row of blocks and the Mississippi river from Plum street to Hazel street, a space of ground left for a street, road, tow-path, or levee, dedicated to any other use common to the inhabitants thereof, or to the public use, then the lots in said blocks are not riparian, and not entitled to alluvion.

5. If the jury believe from the maps and plats, and all of the other evidence in the case, that the Spanish authorities intended to leave a space from Plum street to Hazel street in the former town of St. Louis, between the most eastern tier of blocks (of which block 44 is one) and the Mississippi river for a continuation of Main street, or Fourth street, or for any other public purpose, then the lots in said block have no riparian rights.

6. The jury are instructed to disregard all parol evidence tending to establish the boundary of a lot varying from that of other lots in the same tier, if they are satisfied from all

the evidence in the cause that such uniformity was a part of the plan of the Spanish town of St. Louis.

7. The jury are instructed that, as a question of law, the owners of lots in the town of St. Louis, as said town existed prior to December 20, 1803, have never had any riparian rights.

8. If the jury believe from the evidence that the defendants claim under a confirmation, and that the survey of such confirmation does not call for the river as a boundary, they are stopped by said survey, and cannot claim any rights as riparian proprietors.

9. If both the confirmation and surveys of the United States to private individuals for the most eastern row of lots west of the premises in controversy do not call for the Mississippi river as a boundary, then the owners of said lots are not entitled to said premises as riparian proprietors.

10. If the jury believe from the evidence that prior to December 20, 1803, there was a road or passway between the front row of lots in the former town of St. Louis and the Mississippi river; and the river after that time washed away the land, so that the western edge or bank thereof was west of said road or passway, and west of the eastern boundary line of said lot; and that afterwards the river receded, so that the present western edge or bank thereof is no farther west than where it was prior to December 20, 1803, the owners of said lots are not entitled to riparian rights.

11. As the concession, confirmation and survey to Louis Ride or his representatives call for a permanent road on the east, neither the said Ride or his representatives nor any one claiming by, through or under him or them, can claim any riparian rights.

12. It is only the acts and proceedings of the Spanish Government which have been confirmed by the United States, or the acts and proceedings of the United States themselves, that can give or create riparian rights, or any other rights, in or to the land in dispute. No act or proceeding of the corpo-

ration of the City of St. Louis, or of any private individual, can give or create any such right or rights.

13. The whole or any part of a Spanish concession which has not been confirmed by the United States, does not grant or convey any right, title or interest in or to any lands.

14. The defendant in this cause has set up no title in himself, or those whom he represents, or under whom he claims, but seeks to maintain his possession as a mere intruder by setting up title in third persons with whom he has no privity. In such a case, it is incumbent upon the party setting up the defence to establish the existence of such an outstanding title beyond all controversy. It is not sufficient for him to show that there may possibly be such a title ; if he leaves it in doubt, that is enough for the plaintiff. Where the plaintiff has a *prima facie* good title, he has a right to depend on such title, and is not bound to furnish any evidence to assist the defence. It is not incumbent on him negatively to establish the non-existence of such an outstanding title, but it is the duty of the defendant to make its existence certain.

To the refusal of the court to give said last mentioned instructions, the plaintiff at the time excepted.

The court gave the following instructions to the jury at the request of the defendant, viz.:

1. If the jury find from the evidence that prior to and on the 20th December, 1803, Madame Charleville inhabited, cultivated and possessed a lot of ground in the town of St. Louis, being part of the present city block 44, and bounded on the west by the present Second street, on the north by the present Lombard street, on the east by the Mississippi river, and on the south by the north line of the lot of Leveille, which was parallel to said Lombard street; that said Madame Charleville claimed title to said lot, and she and those deriving title under her continued to inhabit, cultivate and possess said lot down to the 13th June, 1812; that river accretions have been made to said lot along its eastern line, and the premises sued for are a part of such accretions lying

between the north and south lines of said lot extended to the river in its present position,—then the plaintiff cannot recover, and the jury must return a verdict for the defendant.

2. The circumstance that a passage-way or tow-path existed along the river bank will not affect the right of the parties, if the jury believe that the same was kept up at the charge and risk of the proprietor of the lot ; that it followed the changes of the river going to the east or west as the river receded or encroached upon the lot, and that the eastern enclosure of the proprietor was advanced or set back with such changes.

3. If the jury believe from the evidence that the claim confirmed to and surveyed for the representatives of Louis Ride, as shown in evidence for the plaintiff, was another and different claim from that under which Madame Charleville inhabited, cultivated and possessed her lot in block 44, and that said lot claimed by and confirmed to the representatives of Ride was in truth locally situate in another and different block, then the jury ought wholly to reject the confirmation and survey for the representatives of Ride as being irrelevant to the matter in controversy in this suit.

To the giving of said instructions for the defendant the plaintiff excepted. The jury found a verdict for the defendant.

*James Taussig*, for appellants.

I. The receipts of the collector of State and county taxes, for taxes paid by Risley from 1837 to 1857 on his lot in block 44, were not competent and relevant testimony for the purpose for which they were offered, and ought to have been excluded.

The defendant expressly stated that he offered these receipts as evidence only of the boundary of his lot—St. Louis v. Gorman, 29 Mo. 593. Traditionary evidence is not admissible for the purpose of proving the boundary of a private estate—1 Greenl. Ev. § 145, note 1, and cases cited, and note 1 to p. 188 ; id. §§ 128–9, 131, 135–7.

II. The testimony of Thomas Marshall was incompetent and should have been excluded.—1 Greenl. Ev. § 440—see particularly end of section on p. 552, and notes 3 & 4; Davis v. Mason, 4 Pick. 156 ; Farrar v. Warfield, 8 Mart. (N. S.) 695-6.

III. The court ought to have declared as a matter of law that the Charleville lot was bounded on the east by a street, and therefore not entitled to riparian rights.

Where the boundaries of a lot are, is a matter of fact to be determined by the jury ; but what constitute the boundaries of a lot, is a question of law to be decided by the court— Whittelsey v. Kellogg, 28 Mo. 404; Bell v. Dawson, 32 Mo. 79. The instructions given at the request of defendant should therefore have been refused—Smith v. City of St. Louis, 21 Mo. 36; Smith v. Pub. Schools, 30 Mo. 298.

IV. Admitting, for the sake of argument, that it was not a question of law, but a question of fact, whether the Charleville lot was bounded on the east by a street, it is submitted that the defendant, as a trespasser, was precluded from raising the question, and that the survey of block 44, made by the United States, was conclusive against him.

The defendant did not show or set up any title in himself ; he was a mere trespasser, and was therefore not in a position to attack the plaintiff's title by attempting to show that the land covered by survey 400 was not vacant in 1803—Kissell v. Schools, 18 How. 18; Jones v. Soulard, 24 How. 40.

Instructions Nos. 1 and 2, refused, should have been given. Instruction No. 14 ought to have been given—6 Pet. p. 303.

V. The 1st, 3d, 4th, 5th and 10th of plaintiff's instructions, refused, contained a correct exposition of the law of riparian rights as declared by this court, and ought to have been given—Smith v. Pub. Schools, 30 Mo. 295 ; New Orleans v. United States, 10 Pet. 662 ; 4 Mart. 97 ; 6 Mart. 19. Cotton Press Cases—18 La. 122, 278, 286 ; 7 Mart. 626, n. 5 ; 9 Mart. 656.

*R. M. Field,* for respondents.

I. It was contended by the plaintiff, in the court below, that riparian rights did not attach to lots in the town of St. Louis.

The Supreme Court of this State passed on this precise question in the case of Smith v. Pub. Schools, 30 Mo. 301. If the river is the boundary of a town lot, it may be riparian just as much as a tract of land would be in the country.

The same question was decided in the Supreme Court of the United States, in Jones v. Soulard, 24 How. 41.

II. That tradition, reputation and hearsay are admissible in respect to the existence, character and extent of public rights, and in respect to the location and boundaries of things of a public nature, is received as a settled rule by all text-writers on the law of evidence.

The English cases make a distinction between public and private boundaries, holding that the latter cannot be proved by hearsay unless they are identical with a public boundary, in which last mentioned case hearsay is admissible—Thomas v. Jenkins, 6 Ad. & El. 525. In the present case, the dispute between the parties grew out of the existence of a road along the eastern line of the lot. According to the rule of the English courts, the character of this road might be ascertained by hearsay proof. But the American courts have been much more liberal, and have rejected the distinction above mentioned, holding that reputation and hearsay are always admissible on the subject of boundaries, whether public or private. The cases are collected and commented on by Judge Cowen in his edition of 1 Phill. Ev. 219, n. 87.

This case is not at all analagous to that of St. Louis v. Gorman, 29 Mo. 573, in which the party relied on tax receipts as passing the city title by estoppel. No such effect is claimed here. In cases involving the statute of limitations, tax receipts have always been admitted as evidence of the character and limits of the possession—Williams v. Dongan, 20 Mo. 186; Menkens v. Ovenhouse, 22 Mo. 71; Draper v. Shoot, 25 Mo. 197.

By reference to the Pennsylvania cases, it will be seen that the courts of that State have decided that the payment of taxes may enlarge the limits of an adverse possession; so that if a trespasser enters upon a tract of land, and actually possesses only some small part, yet, by paying taxes on the whole for the time prescribed for limitation, he will acquire title to the entire tract—Royer v. Benlow, 10 S. & R. 304; Reed v. Goodyear, 17 S. & R. 350; McCall v. Nealy, 3 Watts, 73; Sorber v. Willing, 10 Watts, 141. Under this rule, it would seem that, in the case of St. Louis v. Gorman, *supra*, if the latter had continued to pay taxes for the whole period prescribed for limitation, he would have obtained a perfect title. And applying the same rule to the present case, it is manifest from the record that any right from the city was barred by the statute of limitations.

WAGNER, Judge, delivered the opinion of the court.

This was an action of ejectment, which resulted on the trial below in a verdict and judgment for respondents. The property, of which the title is drawn in question, is block 856 in the city of St. Louis, and lies between Hazel and Lombard streets, and east of the old city block 44. It is shown, that, previously to 1844, the Mississippi river ran along the eastern border of block 44 and considerably west of the present Main street. After the great flood of 1844 accretions began to form, and in a few years the shore in front of block 44 had reached several hundred feet. This led to a new arrangement of streets. Main street, which had previously run no farther south than Plum street, was extended through the new-made land, with an enlarged width; Lombard and Hazel streets were prolonged to the new bank of the river, and, in this way block 856 was formed.

The City of St. Louis originally claimed the ownership of the block in controversy, contending that the lots in block 44 did not extend to the river, but were separated from it by a street, passway, or open place, which belonged to the city, and attracted the accretions.

The Board of Public Schools set up claim to ownership, under the reservation in its favor, by act of Congress of 1812, of all vacant lots, asserting that riparian rights did not attach to urban property, and that as the town of St. Louis extended to the middle of the river, and that as the bed of the river was not rightfully claimed at the date of the act by any private individual, it fell of course to the Public Schools. Before the commencement of this action the city conveyed to the Public Schools all its title to block 856.

The proprietors of block 44 (the respondent being one of them) also claimed the said block, insisting that their rights of property extended to the river, and the new-made land belonged to them as being a riparian accretion.

On the trial, the plaintiff, as proof of title, gave in evidence the record of the incorporation of the town of St. Louis, made by the Common Pleas Court in 1809; the outboundary survey of St. Louis, by the Surveyor-General, in 1840; the assignment of block 856 to the Board of Public Schools, by the Surveyor-General, in 1857, said survey numbered 400; act of Legislature, approved November 28, 1857, authorizing a compromise of conflicting claims between the city and the school board; the deed of the city conveying block 856 to the school board; and an act of the Legislature, approved March 3, 1851, in relation to swamp lands in Saint Louis county.

Plaintiff then introduced in evidence several maps and a large mass of documentary evidence, which is not sufficiently material to require being set forth here; and, among others, a concession to Louis Ride and a confirmation of the same, together with a survey of the same confirmation by the Surveyor-General. According to this survey, the claim was located in the northwest quarter of block 44, and extended eastwardly no farther than 150 feet. Also much testimony tending to prove (though slightly, we think) that the original grant or concession of block 44 was bounded on the east by a road which separated it from the Mississippi, and that it did not extend to the river.

The defendant proved that the old city block 44, which lies immediately west of the block in controversy, was inhabited and cultivated for many years prior to December 20, 1803—one Leveille living on the south half, and Madame Charleville on the north half. The fact of such cultivation and inhabitation was fullen proven; the contest was in respect to the extent of the lots of Leveille and Charleville towards the east, the defendant insisting that they extended to, and were bounded by, the river; while the plaintiff contended that they ran no farther eastward than a public passway, or open space, that separated the lots from the river. This was the real controversy and the main issue of fact before the jury.

The defendant introduced a concession by the Spanish Governor, dated March 1, 1788, to the free negro Charles Leveille, for a lot in St. Louis of 60 by 150 feet, and described in the concession as follows: "bounded on the one side by the heirs of Louis Ride; on the other, by His Majesty's domain; on the rear, by the Mississippi [*por detras, al rio Mississippi*]; and on the main front, by the road which follows from the second main street to the Prairie-à-Catalan." The defendant also introduced a concession by Governor Manuel Perez to Augustin Amiot, dated September 2, 1788, of a lot in the southern part of St. Louis, described as follows in the concession: "120 feet front by 150 feet deep; bounded on the north side by the lot of the free negro called Charles, on the other side by the royal domain, on the rear by the Mississippi, and on its principal front by the royal road leading to the Prairie-à-Catalan."

Parol evidence was introduced by both parties, tending to show on the one side that in Spanish times the lots ran to the river; that there was never any street between the east end of the lots and the river; that the ends of the fence would sometimes have to be moved back on account of the abrasion or falling in of the river bank; the river, for some years prior to 1844, occasionally slightly receded from the east bank, in low water, but in consequence of high water in

1844 the ground afterwards made rapidly eastwardly; the accumulations were also caused by the materials used in constructing cross-streets out in the river.

On the other side, the parol evidence tended to prove that there was always a path or road (*sentier*) between the lots and the river in Spanish times, and that the road extended the whole length of the town; that the government always left a strip of land along the river for voyagers, but that the road along the river was repaired by the voluntary act of the people living along the road, and not by public authority or public taxes. Defendant gave in evidence a resolution of the board of aldermen of the City of St. Louis authorizing a survey and map of the city, and a lithographic copy of Paul's map of 1823, which was proved to be a true copy of the original made under such resolution. It was admitted that the field notes of the survey and the original map were lost. From this map it appeared that Main street extended, at the date of the map, no farther south than Plum street, and that the river covered all the eastern part of block 44.

Defendant then introduced the ordinance of the city passed in 1851, opening Main street south of Plum and through block 44, and proved that defendant, in conformity with the ordinance, relinquished the right of way; also a tax sale of the lot of Leveille for the city taxes of the year 1826. The certificate of sale and the assessment describe the lot as bounded east by the river.

Defendant then showed in evidence the tax receipts for defendant's property for the years 1837, 1838, 1839, 1845, 1846, 1847, 1848, 1849, 1853, 1854, 1855, 1856, 1857. From these receipts, it appears that up to 1853 the defendant was taxed for a lot in block 44 as bounded on the east by the river. The depth of the lot is described as increasing from 150 feet in 1837 to 800 feet in 1854. In 1854, and following years, the defendant was taxed for the property in dispute as lying between Main and Front streets. Defendant also showed that he had been assessed by the city, and had aid in 1854 a tax on the property in question *for opening*

streets, and then introduced a map of Risley's addition, recorded in 1855.

Defendant then introduced Thomas Marshall as a witness, who testified that he was an examiner of titles; that he had examined almost all titles to lands in the city of St. Louis, and who gave it as his conclusion that the land of Ride was north of Elm street. Also read in evidence the deed of Tayon to Papin in 1832, in which the lot is described as bounded eastwardly by the Mississippi river, or street if any there be; also the deed of Papin to Stearnes and Risley, containing the same boundaries; also the deed of Stearnes to Risley in 1836, with the same boundaries.

There was much other testimony on both sides, but the above constitutes essentially the controlling parts, and the balance was merely auxiliary or cumulative.

Several objections were taken on the trial to the admissibility of evidence on the part of the appellant, but the objections were mostly of a general character, without specifying any particular reasons against the admission; and where such is the case, this court has held that it will not look into the question to see or conjecture on what grounds the evidence was objectionable. Evidence may be admissible for one thing in the course of a trial, when it would be wholly excluded for another, and it is the duty of a party objecting to state specifically his reasons therefor. It is insisted that the court erred in receiving the receipts of the collector of State and county taxes paid by Risley from 1837 to 1857 on. his lot in block 44, and that the case of St. Louis v. Gorman, 29 Mo. 593, is an authority directly against the admission of the evidence. But the cases are not analagous. In Gorman's case, the party relied on tax receipts as passing the title of the city by estoppel. It clearly appeared there that the officers of the corporation, without any authority, assessed the property of the corporation against a person for taxation, and returned the same as delinquent for non-payment of taxes, bought it at the tax sale, and conveyed it upon redemption; and this was held not to estop the city

from claiming its property against the unauthorized acts of its officers. But no such state of facts were set up in this case. The payment of taxes, singly and by itself, would amount to very slight evidence; but in some circumstances such payment is a fact which may be submitted to the jury, and be weighed by them in making their verdict.

Payment of taxes has been admitted in questions of adverse possession, and may have an important bearing, as it is not usual for one owning realty to neglect paying taxes for a period which would be sufficient to constitute a bar under the statute of limitations, or for one to pay taxes having no claim or color of title.

The party here, however, was in possession, and the evidence was introduced ostensibly for the purpose of defining the boundaries. We think the evidence was properly allowed to go to the jury as a circumstance to show what was the understanding of the parties as to the lines and boundaries of the lot. As to the testimony of Marshall, it is clear that his opinion was not admissible; there is certainly nothing in the law of evidence which would make the opinion of an examiner of titles evidence of location in case of conflicting and doubtful lines. A practical surveyor may express his opinion whether the marks on trees, piles of stones, &c., were intended as monuments of boundaries; but he cannot express an opinion that, from the objects and appearances which he saw on the ground, the tract he surveyed was identical with the tract marked on a certain diagram—1 Greenl. Ev. 440.

But granting that the evidence was entirely incompetent, when the other proofs are considered together with the original concession we do not see that the appellant was injured by it.

It is objected that the deeds of Papin and Stearnes were not admissible to show title in the respondent because they were offered and read in reply to the rebutting testimony of the appellant. Although the respondent had rested, and these deeds were necessary to show his derivative title, yet

the introduction of testimony out of its regular order, or after a party has closed his case, when he has omitted a material link through inadvertence, is a matter resting in the sound discretion of the court below, and will not be reviewed here.

In the present case, the dispute between the parties grew out of the existence of a road along the eastern line of the lot. The law seems to be well settled, that tradition, reputation and hearsay are admissible to prove the extent, character and existence of public rights as regards the location and boundaries of things of a public nature. The only conflict here being as to whether the eastern line of the lot was bounded on a public highway, it follows that it falls fully within the rules admitting hearsay, reputation and tradition. But it is needless and supererogatory to examine with particularity and detail all the questions that have been raised in argument. The only important point in the whole case turns on the question as to whether the proprietors of the lots are entitled to riparian privileges. This question has been considered twice before in this court, and once in the Supreme Court of the United States, and must be considered as settled as *res adjudicata*, and no longer a subject for discussion.

In the case of Jones v. Soulard, 24 How. (U. S.) 41, it is expressly decided that the calls for the eastern line of the boundary of St. Louis, in the incorporation of 1809, make the city a riparian proprietor upon the Mississippi, and as such entitled it to all accretions as far as the middle thread of the stream. In Smith v. Public Schools, 30 Mo. 301, it is held that if the river is the boundary of a town lot, it may be riparian just as much as a tract of land would be in the country; and the question is again examined, affirmed and approved in LeBeau v. Gaven, 37 Mo. 556. That the calls and descriptions contained in the original concession to Leveille called for the bank of the Mississippi as its eastern boundary, cannot be for a moment gainsayed or doubted.

Whatever evidence there was bearing on the subject was

given to the jury under instructions of the most favorable character for the appellant.

We have been unable to detect any error in the action of the court in either giving or refusing instructions, and we accordingly order its judgment to be affirmed.

The other judges concur.