## THE CITY OF ST. LOUIS *Appellant* v. THE MISSOURI PACIFIC RAILWAY COMPANY.

### Division One, February 6, 1893.

1. **Land:** RIPARIAN OWNER: ALLUVIUM. The right of the owner of land whether rural or urban on a river shore to the increase thereof caused by alluvial deposit, is settled in Missouri.

2. ———: ———: ———: PUBLIC STREET. Where a city lot is separated from the river by a street owned in fee by the public, the accretion belongs to the street for public use and not to the lot owner.

3. ———: ———: CARONDELET COMMONS. The history of the title of the city of St. Louis to the river front, formerly part of the Carondelet commons, traced.

4. ———: OFFICIAL SURVEY, CONSTRUCTION OF. In construing maps of official survey, courts give effect to the meaning expressed by their outlines as well as by their language.

5. ———: STATUTE OF LIMITATIONS: LACHES OF CITY OFFICERS. In Missouri the neglect of city officers to assert the public right during the period of the statute of limitations will not have the effect to transfer to a private claimant any part of the city property held in trust for public use.

6. ———: ———: ———. The principle just stated is not affected by the fact that the property has never been graded or otherwise improved as a street by the city authorities.

7. **Railroad:** USE OF STREET: EJECTMENT. The fact that a railroad company may have a vested right to the use of one or more tracks upon a public street will not constitute a bar to an action in ejectment for the street by the city, where the company denies the city's title. The reciprocal rights of the parties in such a case can be defined in the judgment.

8. **Practice:** DEMURRER TO EVIDENCE. In reviewing a ruling upon a demurrer to the evidence the party on whom the burden of proof rested is entitled to to the benefit of all facts before the court at the time as well as of all reasonable inferences therefrom.

114 13
50a 353
114 13|
122 96|
|125 657
|114 13
|168 ⁵598
114 13|
169 ⁵615|

9. **Deed**: RECORDED PLAT. Where a deed conveys a lot as indicated on a recorded plat, the latter may be consulted in aid of the description in the deed.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES A. SEDDON, Judge.

REVERSED AND REMANDED.

SUCH portions of the plats of Eiler's and Mackay's surveys as are referred to in the opinion of the court are indicated by the copies on the adjacent pages.

On Eiler's map appears the following statement not reproduced on the copy, viz.:

"Remarks. On the river Mississippi is left a tow of about seventy feet, english measure. Main street is forty feet, english, wide, and from the northern to southern boundary line of the town twenty-six hundred and twenty-four yards. Second, Third and Fourth streets are each thirty-five feet wide. The cross-streets are thirty feet, english, wide with the exception of "F" street which is only an alley of twelve feet wide and "G" street is entirely shut up, owing to the circumstance that there was not sufficient ground for the blocks when the streets should maintain their proper width. The blocks are three hundred feet, french, three hundred and twenty-eight and eight tenths feet, english square, with exceptions of fractions on river side and other fractions whose measures are given on the plat.                     L. M. EILER,

"[Signed.]                     Deputy Surveyor."

The dedicatory language on Mackay's plat is as follows, viz.: "The annexed plat represents a portion of the Carondelet commons of the town of Carondelet, which has been laid off and surveyed by order of the board of trustees of said town of Carondelet, a portion of which is bounded north by the common fields of

Carondelet and a portion thereof is bounded north by the common fields of St. Louis, east by the Mississippi river, south by the River Des Peres, and west by Alvarez tract of land; and I, Peter D. Barada, as chairman of the board of trustees of said town of Caron-. delet, do hereby declare that the streets and alleys as laid off upon said plat to be relinquished to the use of the public forever.

"[SEAL]                    "PETER D. BARADA,

"Chairman of the board of trustees of the town ·of Carondelet.

"STATE OF MISSOURI, ⎱
"County of St. Louis. ⎰

"Be it remembered that on this twenty-fifth day of May, A. D. 1847, before the undersigned, clerk of the St. Louis county court, came Peter D. Barada, Esq., chairman of the board of trustees of the town of Carondelet, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument of writing, and, as said chairman of the board of trustees of said town of Carondelet, acknowledged the same to be his act for the purposes therein mentioned.

"In testimony whereof, I have hereunto set my hand and affixed the seal of said court and office in St. Louis, the date last above written.

"STEPHEN D. BARLOW, Clerk."

The other necessary facts appear in the opinion.

*Leverett Bell* for appellant.

(1) In ejectment the plaintiff has the right to show by competent evidence that the defendant derived whatever interest he had in the land in controversy from the common source of title. And when plaintiff and defendant claim through a common source of title, it is sufficient for the plaintiff to deduce his title from the

common source. . *Grady v. Casey*, 93 Mo. 595; *Smith v. Lindsey*, 89 Mo. 76; *Miller v. Hardin*, 64 Mo. 545. (2) In this case there is a common source of title, namely, the town afterwards city of Carondelet. (3) The plaintiff has shown a complete record title to the premises in controversy. *City v. Railroad*, 79 Mo. 100. (4) The defendant has not exhibited a paper title to the premises in controversy. (5) The defendant is not entitled to the land sued for by virtue of its possession, which commenced in 1872, more than ten years prior to the commencement of this action. *Moses v. Dock Co.*, 84 Mo. 242. (6) The defendant cannot claim the premises in question under the doctrine of accretion. *St. Louis v. Lemp*, 93 Mo. 476; *Moses v. Dock Co.*, 84 Mo. 242. (7) There is no outstanding title to the ground in question in the Mullanphy heirs. (8) The premises sued for constitute a public highway, and the railway tracks thereon require the consent or license of the city of St. Louis. *Butchers' Union Co. v. Crescent City Co.*, 111 U. S. 746; 2 Kent's Commentaries, 340; *Thorpe v. Railroad*, 27 Vt. 140; *Railroad v. Tilton*, 12 Ind. 3; *Railroad v. McClelland*, 25 Ill. 140; *Owen v. Railroad*, 83 Mo. 454. (9) The case must be determined on all the evidence. *Weber v. Railroad*, 100 Mo. 194.

*H. S. Priest* and *H. G. Herbel* for respondents.

(1) The deeds read in evidence prove the title to the land in controversy to be in the defendant. *Municipality v. Cotton Press*, 18 La. 239; *Morgan v. Livingston*, 6 Martin (La.), 230; *Smith v. Public Schools*, 30 Mo. 291; *Public Schools v. Risley*, 10 Wall. 91; *Myers v. City of St. Louis*, 82 Mo. 373; *Sphung v. Moore*, 22 N. E. Rep. 318; *Jeffreys v. East Omaha Co.*, 134 U. S. 178; *Railroad v. Shurmeier*, 7 Wall. 272; *O'Fallon v.*

# TOWN OF CARONDELET.

Surveyed Nov. 1832   L. M. Eiler Deputy Surveyor.

## MACKAY'S MAP.

*Daggett*, 4 Mo. 347. (2) If the deed from the Mullanphy heirs failed to convey title to the land to the river, then there is an outstanding title in the Mullanphy's heirs which defeats plaintiff's action. (3) Defendant proved title to said land by adverse possession of more than ten years. *Funkhouser v. Langhoff*, 26 Mo. 460; *McCune v. O'Fallon*, 32 Mo. 13; *Duncan v. Railroad*, 22 Mo. 614. (4) Even if the ground sued for were a public wharf or highway, the defendant as a successor of all the rights, powers and franchises of the Pacific railroad has the right, by virtue of section 11 of the charter of the Pacific railroad, to maintain and operate its tracks thereon, without the consent of the city authorities. Session Acts, 1849, pp. 220, 211; *Railroad v. St. Louis*, 66 Mo. 228; *Railroad v. Maguire*, 20 Wall. 36; *Bailey v. Railroad*, 22 Wall. 604; *Railroad v. Reid*, 13 Wall. 263; *Miller v. State*, 15 Wall. 488; *Binghampton Case*, 3 Wall. 488; *Home of Friendless v. Rouse*, 8 Wall. 431; *Sloan v. Railroad*, 61 Mo. 24; *Daniels v. Railroad*, 62 Mo. 43.

BARCLAY, J.—Plaintiff brought this action in ejectment to recover of defendant the possession of a tract of land in the present limits of St. Louis.

Upon issues joined, a trial was had, at the close of which the court declared that plaintiff could not recover, and accordingly entered a judgment for defendant. Plaintiff then appealed, after the customary motions and exceptions.

The case involves conflicting claims of title to a body of real estate on the bank of the Mississippi, in that part of St. Louis formerly composing the separate municipality of Carondelet.

The leading facts are admitted by both parties. The only question is as to their legal sufficiency to

sustain the claim of ownership asserted by the plaintiff.

1. In examining that question we are to take into view all the testimony, whether offered by one or by the other party. For it is a rule of practice that, in considering the correctness of an instruction in the nature of a demurrer to the evidence, the party on whom the burden of proof rested is entitled to the benefit of all the facts before the court at the time the instruction is given, as well as to all reasonable inferences therefrom, whether those facts were developed by the plaintiff or by the defendant.

Under the rule just stated we shall not attempt to group the facts in the order in which they were presented to the trial court; but in such sequence as will exhibit the merits of the controversy as shortly as possible.

2. The main issue is found in that part of the case which concerns the claim of defendant to the land in suit as an accretion to city block number 3123, formerly known as block 22, of Mackay's survey of the Carondelet commons. That survey was made by direction of the trustees of the town in 1847, and an official plat thereof, acknowledged by the chairman of the board of trustees, was duly recorded May 25, 1847.

Mackay's survey was supplemental to an earlier one by Mr. Eiler (under authority of the town act of 1808, 1 Territorial Laws, p. 184), made in 1832 and evidenced by a plat duly recorded in that year on which the town of Carondelet and the adjacent commons were exhibited.

By act of the General Assembly, February 13, 1833, the board of trustees received express authority to sell and convey all the vacant lots of ground to which the inhabitants of the town had legal or equitable

title, and which were included in Eiler's survey (2 Territorial Laws, p. 393).

Mackay's survey was in effect but a continuation southward of the survey by Eiler, conforming to the latter. The tier of unnumbered blocks indicated on the north side of Mackay's is the same shown on the south side of Eiler's map.

In 1833 the town adopted an ordinance declaring "that no impediment or obstruction of any nature whatever shall be built, set up or erected in or on the tow path or Water street, extending along the Mississippi river, within the limits of said town," under a penalty; and making further provisions for the removal of driftwood from the river bank so as to secure "a free access to the place of landing," within the town.

In 1851 the inhabitants were incorporated as the city of Carondelet, with defined limits, including the property in suit (Session Laws, 1850–1, sec. 2. p. 139). In the act of incorporation, Mackay's survey is mentioned in describing the corporate boundaries.

Defendant, by various conveyances, has a paper title to block 22 of Mackay's survey, which plaintiff does not dispute. The property in controversy is that which has been formed by accretion since 1847, east of the river line indicated on Mackay's plat, and opposite block 22. This alluvion at the time of the trial amounted to a considerable tract of about three hundred and twenty-eight feet in length along the river, by a depth of two hundred feet westward therefrom. It is this that defendant claims to own as appurtenant to block 22.

In 1870 the city of St. Louis, which until then adjoined Carondelet, was extended to embrace the latter with the property in question (St. Louis Charter, 1870; Session Laws, 1870, sec. 2, p. 461, and sec. 4. p. 487).

By the law in force in 1847, when the dedication accompanying the Mackay plat was made, the title to those portions of the land indicated thereon as streets passed in fee to the county of St. Louis, in trust for the public (sec. 6, p. 1056, Revised Statutes, 1845). By the "scheme" for the separation of the city from the county of St. Louis that title passed to the city, the present plaintiff (Scheme & Charter; Revised Statutes, 1889, sec. 10, p. 2078).

Thus plaintiff has succeeded to the title of the inhabitants of the town of Carondelet by virtue of the legislation on that subject.

Plaintiff's contention is that the property in controversy belongs to it for public use, as an accretion to the street fronting the river, and not to block 22.

In examining the merits of that contention it will be well to keep in mind the general nature of the title held by the inhabitants of Carondelet. That title originated before the cession of the territory of Louisiana to the United States government in 1803. Its extent has been the subject of much litigation, in the reports of which will be founded a history of its devolution. *Dent v. Bingham*, 8 Mo. (1844), 579; *Carondelet v. McPherson*, 20 Mo. (1854), 192; *The Carondelet Case*, 9 Court of Claims (1873), 455.

It will not be necessary in this action to go further into that history than to say that block 22 and the adjoining land belonged to that class of property known as the Carondelet "commons," a species of property having its origin in the laws and customs of continental Europe (compare "*The Swiss Allmends*," 19 Journal of Jurisprudence, 369), but recognized in Missouri (under the treaty of Paris for the cession of Louisiana in 1803, and the acts of Congress giving effect thereto) by many public acts (*e. g.*, 1 Territorial Laws (1809), p. 184; 2 Territorial Laws

(1835), p. 501), and judgments of the courts (for instance: *Carondelet v. Lannan,* 26 Mo. (1858), 461; *Carondelet v. St. Louis,* 25 Mo. (1857), 449, and 1 Black, 179; *Dent v. Emmeger,* 14 Wall (1871), 308).

In subjecting such property to our local laws, portions of it have been made vendible by express enactments. 4 United States Statutes at large, p. 435; 2 Territorial Laws, pp. 393, 501; Session Laws, 1838–9, p. 210; Session Laws, 1850–1, sec. 1, p. 148. And defendant's title to block 22, which is not disputed, rests upon transfers predicated on authority to sell.

The Carondelet commons, as shown upon Eiler's plat, reached the Mississippi river, and the specific description of that part thereof, surveyed later by Mackay, calls for that river as the eastern boundary of the tract. So that the owner of the Carondelet title to the shore of that river at the point of controversy is plainly the riparian owner within the meaning of the law.

The right of the riparian proprietor to the increase of his possessions caused by the imperceptible deposit of alluvion on the banks of public waters is well recognized in the English as in many other systems of law. It is generally said to exist as a natural corollary to his liability to bear the burden of loss, should the slow encroachment of the stream diminish his territory, though better reasons for its existence could be assigned, were it necessary. It is not however. The right is clear, but the difficulty of identifying the persons entitled to its advantages in particular cases has occasioned extensive litigation and led to elaborate judgments, which leave to us at this day no greater task than to apply the principles they declare.

On Mackay's plat, block 22 (now owned by defendant) is separated from the river by the same kind of

an open space which forms the continuation of a similar one on Eiler's plat; but that space is designated on the latter as "A tow or Water street," "of about seventy feet, english measure." On Mackay's map this open space on the Mississippi river bank bears no street name; but the same may be said of all the similar spaces running east and west between the blocks on that plat. Like spaces running north and south bear such names as "Van Buren street," "Clay street," "Benton street," etc.

The appearance of the plat, the language upon it in the accompanying certificate, leave no room to doubt that all these spaces between the numbered blocks represent streets, and that the space on the border of the river is intended to indicate a continuation of the street on the river bank, described by Eiler, as well as in the town ordinance of 1833.

In construing such a muniment of title as this plat, courts will give effect to the plain meaning and intent they exhibit by their outlines as well as by their words.

The early transfers of title to block 22 referred for particulars to the Mackay plat, which thereby became part of the description of the land conveyed. Some of those conveyances specified "Front street" as the eastern boundary of the block, confirming the interpretation of the plat above indicated.

Old decisions, and all those we have seen in this state on the subject, declare our law to be that where a city lot is separated from the river by a street, owned in fee by the public (or in trust for the public, as in this case), the proprietor of the lot is not entitled to the alluvion formed upon the street opposite the lot. This proposition must now be considered settled. *Smith v. St. Louis*, 21 Mo. (1855), 36; *Smith v. Schools*, 30 Mo. (1860), 290; *St. Louis v. Lemp*, 93 Mo. (1887), 477.

The above rule has been so well established in this state and the reasons thereof so fully given, that it would be of little advantage to comment upon decisions elsewhere having a real or supposed tendency to the contrary, further than to say that some of them (*Municipality v. Cotton Press*, 18 La. (O. S.) (1841), 123; *Delachaise v. Maginnis*, 11 S. Rep. (La.) (1892), 715) depend on readings of a written code of another jurisprudence, not now in force in Missouri. 1 Territorial Laws, sec. 1, p. 436. Compare in connection with those decisions, *New Orleans v. United States*, 10 Pet. (1836), 662, and *Potomac Co. v. Upper Potomac Co.*, 109 U. S. (1883), 672.

The judgment in *Myers v. St. Louis*, 82 Mo. (1884), 367 does not oppose this rule, but merely determines from conflicting language in an instrument that the true purport thereof is to make the river the boundary of the property.

In the case in hand there is no such ambiguity of terms. The metes and bounds of block 22 are those fixed by Mackay's plat. The stream did not touch that block at any point thereon, but was plainly separated from it by the street, seventy feet wide, already described.

It must therefore be held, applying the principles of former decisions, that plaintiff, the city of St. Louis, is the riparian proprietor, and as such entitled to the accretion in litigation.

3. The next objection urged to plaintiff's title is that defendant has acquired an adverse one by possession under claim of ownership and lapse of time.

The Pacific railroad, under which defendant makes this claim, placed a railway track on the property as early as 1872; and the present action was begun in 1886.

Conceding that the claim and possession were of such sort as would ordinarily form the basis of a title under the statute of limitations, the vital question following that concession is whether a private right to the public streets can be established in that way.

The history of the title in the preceding paragraphs shows that the city of St. Louis is invested with the legal ownership of the property in trust for the use of the public as a street. In the exercise of certain powers conferred by the state, and as its agent, the city may (in prescribed ways) terminate the public title, as, for instance, by vacating a street; but it cannot extinguish the rights of the public by a conveyance to an individual or corporation of part or all of a street as private property; certainly not without clear authority of law. If this be so, how can municipal officers do indirectly by their neglect what they could not do by the most solemn conveyance?

Furthermore, the first move of the Pacific railroad towards acquiring the title in such a manner was taken in 1872, at which time our law declared that the statute of limitations should not apply to lands given or granted to any public use, or belonging to the state. General Statutes, 1865, p. 746, same as sec. 6772 of 1889.

The force of that statute renders it unnecessary to remark upon any of the earlier decisions on this topic. As the law now stands we entertain no doubt that in respect of such property as is here in view, so held by the city for public use as a highway, the lapse of time in asserting the public right to possession constitutes no bar to the present action.

The fact that the street has not been graded, paved or otherwise improved by the city does not affect the principle asserted. The time when such improvements shall be begun rests in the discretion of the municipal

authorities, and the circumstance that they have not seen fit yet to exercise that discretion does not impair the city's standing as owner.

4. Defendant further insists on its right to maintain its railroad tracks on the property in dispute under the franchises granted to the Pacific railroad, to whose transferable rights of property it has succeeded.

By the terms of the charter of the Pacific railroad, that company obtained a franchise to build its road "along or across any state or county road, or the streets or wharves of any town or city, and over any stream or highway" (Session Acts, 1849, sec. 11 p. 221); and by an amendment in 1851 that charter was declared not subject to alteration, suspension or repeal by the general assembly.

The scope of these provisions has been the subject of adjudication by the supreme court in *Railroad v. St. Louis*, 66 Mo. (1877), 228. Whatever may be their bearing on the final issue of this case, it is very plain that they have not had the effect to vest in the Pacific railroad, and still less in the defendant (organized since the constitution of 1875; *Owen v. Railroad*, 83 Mo. (1884), 454) the title to the entire property in suit. The most that can be claimed in that connection by defendant is the continued use of such tracks as were laid by the Pacific railroad upon the city street in question during the period when the original company had the right to exercise the franchise mentioned. Should the trial court find the facts to be such as warrant such use (under the ruling of the supreme court last cited), that right can be secured, as well as its limtations defined, by shaping the final judgment accordingly; but that right would not constitute a bar to this action.

The trial court held that plaintiff had no right of recovery whatever. In so doing we think there was error.

The judgment is reversed and the cause remanded for further proceeding's in conformity to this opinion.. BLACK, C. J., BRACE and MACFARLANE, JJ., concur.