AMERICAN STEEL & WIRE COMPANY OF NEW JERSEY, a New Jersey Corporation, Appellant, v. THE CITY OF ST. LOUIS, a Municipal Corporation; BOARD OF EDUCATION OF THE CITY OF ST. LOUIS, a Corporation, et al.—No. 39552.—190 S. W. (2d) 919.

Division One, November 5, 1945.

Rehearing Denied, December 3, 1945.

*Fordyce, White, Mayne, Williams & Hartman,* and *Joseph R. Long* for appellant; *Knapp, Cushing, Hershberger & Stevenson* of counsel.

694

*Carter, Bull & Garstang, Emmet T. Carter* and *Richard S. Bull* for respondents.

GANTT, J.—Defendant admits that plaintiff correctly states the facts as follows:

### Parties and Property Involved.

This is an appeal taken by the plaintiff from a decree of the Circuit Court of the City of St. Louis, entered in a suit to quiet title to certain real estate in the City of St. Louis. The decree narrowed the issues to be presented on appeal, eliminating a number of issues presented by the pleadings in the trial court. As originally filed, the First Amended Petition sought to quiet title to approximately fourteen acres of land lying within the territorial limits of the former town (later city) of Carondelet, and now within the City of St. Louis, and bordering on the Mississippi River. In the First

Amended Petition, the land involved was particularly described, and the several parcels composing the entire contiguous tract were designated as Parcel 1, Parcel 2, Parcel 3 (A) and Parcel 3 (B). Actually the title of the plaintiff to Parcel 1 and Parcel 2 was never disputed by any of the defendants who appeared herein, and such parcels were included for the purpose of curing certain minor defects appearing in the early chain of title, against possible claims of certain unknown defendants served by publication. Also the title of the plaintiff to Parcel 3 (A) was not seriously contested by the defendants who appeared herein, for reasons which will later appear, and the decree entered by the Circuit Court quieted the title of plaintiff to such Parcel 3 (A), and no Assignments of Error are being taken respecting that portion of the decree. Thus, the only portion of the lands described in the First Amended Petition, the title to which remains in dispute, is Parcel 3 (B).

The only defendants named in the petition who entered an appearance in the suit were (1) The City of St. Louis; (2) The City of St. Louis as Trustee for Board of Education of the City of St. Louis; (3) Board of Education of The City of St. Louis, and (4) Guy A. Thompson as Trustee in Bankruptcy of Missouri Pacific Railroad Company. All other defendants, being unknown persons, were served by publication, and default was entered against them to cure certain minor defects in the early title. The defendant Guy A. Thompson, as Trustee, was brought in because the Missouri Pacific Railroad Company had certain rights-of-way for railroad purposes across the property, but after the First Amended Petition was filed stating that the title claimed by plaintiff was subject to existing rights-of-way, this defendant filed a disclaimer, disclaiming any other interest in the property, and thereafter took no part in the proceedings. The decree entered by the Circuit Court adjudged, in effect, that the defendant The City of St. Louis, either in its individual capacity, or as Trustee for Board of Education of the City of St. Louis, had no interest in the property, and the City has taken no appeal from such decree. Consequently, for practical purposes, the City has been eliminated from the case, and the issues on appeal resolve themselves into a determination of whether the plaintiff or the Board of Education of the City of St. Louis is the owner of Parcel 3 (B).

A map showing all of the property under discussion is included in the Transcript of Record.

The case was tried on a stipulation of facts with supplement thereto, together with oral testimony offered by plaintiff.

### Eiler's Survey.

The property in dispute, Parcel 3 (B), consists of (1) lands formerly occupied by "a Tow or Water Street," shown on Eiler's Survey of Carondelet, and (2) accretions added to such "Tow or

Water Street'' by action of the Mississippi River, all lying east of what became known as Block B of Eiler's Survey of the Town of Carondelet, now a part of the City of St. Louis. The plaintiff claims title thereto as the remote grantee of the original individual owner of such Block B.

Eiler's Survey of the Town of Carondelet was made in 1832. By this survey, the Town of Carondelet was divided into blocks approximately 300 feet square. The north and south streets were approximately thirty-five feet wide, and the east and west streets were thirty feet wide. Along the Mississippi River, and east of the entire front, or east, tier of blocks, there was left a strip of land approximately seventy feet wide, which was designated on the survey as ''A Tow or Water St.'' The remarks on the plat concerning this ''Tow or Water Street'' are, ''On the River Mississippi is left a Tow of about seventy feet (70') English measure.'' Appearing on the plat are two blocks numbered 18 and 19, which were complete blocks having the usual 300 foot dimensions on all four sides. The east halves of these blocks are described in the petition as Parcel 1 and in the Stipulation of Facts as parcels 1 (a) and 1 (b), respectively. Bounding these blocks are east and west streets, beginning with Q Street on the north, R Street between the two blocks, and S street on the south, which are now known as Quincy Street, Blow Street and Nagel Avenue, respectively.

Lying immediately east of each of the blocks numbered 18 and 19 are lands consisting of fractional blocks, and east of the fractional blocks is the ''Tow or Water Street,'' having for its easterly boundary the Mississippi River, there being no intervening land between the tow and the river. The land lying east of Block 18, and west of the Tow, is not shown on the plat as having a western boundary line, but the north end is indicated by a short line. Thus, it is only partially designated by boundaries as a fractional block. However, the western boundary of the Tow is shown at this point. This piece of ground east of Block 18 and extending east to the Tow was designated in subsequent conveyances as Block or Lot A of Eiler's Survey, and became generally known as such. It is the first parcel described in the petition under Parcel 2, and in the Stipulation of Facts as Parcel 2 (a). The fractional block lying east of Block 19, and west of the west line of the Tow, is shown on Eiler's Survey with complete boundary lines, the easternmost of which is the western boundary of the Tow, and through descriptions contained in later conveyances, became generally known as Block B of Eiler's Survey. It is the property described in the petition as the second tract comprising Parcel 2 and in the Stipulation of Facts as Parcel 2 (b).

Block 18 was later designated as City Block 3011; Block 19 as City Block 3044; Block A as City Block 3010; and Block B as City Block 3045, all of the City of St. Louis.

### The Towpath and Accreted Portions of Property.

Parcels 3 (A) and 3 (B) consist of the land formerly occupied by the towpath, together with accretions which have been formed since Eiler's Survey in 1832, Parcel 3 (A) being the lands lying in front of Block A of Eiler's Survey, and Parcel 3 (B) being those lying in front of Block B. Under the decree entered by the Circuit Court, the plaintiff was adjudged to be the owner of Parcel 3 (A) on account of the fact that the original deed from the Trustees of the Town of Carondelet to the original individual owner (plaintiff's remote grantor), conveying Block A of Eiler's Survey, described that block as being bounded on the east by the Mississippi River, making no mention of the intervening towpath. Thus, on the trial, the defendants conceded that Block A, as so described, was riparian, and that the plaintiff, as the present owner of Block A, is likewise the owner of the now abandoned towpath and the accretions lying east of Block A. However, the decree adjudged that Parcel 3 (B), consisting of the abandoned towpath and the accretions lying east of Block B, was the property of the Board of Education, so it is the title to such Parcel 3 (B), only, which is in dispute on this appeal.

### ▆ Plaintiff's Claim of Title to Parcel 3 (B).

As stated above, the "Tow or Water Street" shown on Eiler's Survey has long since been abandoned, and at the present time there is nothing on the surface of the ground to show where it was located originally. The plaintiff is the present owner of Parcel 2 (B) (Block B of Eiler's Survey) and claims title to the westerly 70 feet of Parcel 3 (B) by virtue of the shifting and ultimate abandonment of such towpath, and to the balance of Parcel 3 (B) as an accretion to the towpath, or to Block B of Eiler's Survey.

The Stipulation of Facts sets forth at length the various Acts of Congress and of the Missouri General Assembly forming the origin of the title claims of both the plaintiff and of the defendant Board of Education. The first such Act was the Act of Congress approved June 13, 1812, providing in substance that the titles to town or village lots in the town of Carondelet, and other towns, which were occupied or possessed prior to December 20, 1803, were confirmed to the inhabitants of such towns according to their several rights or rights in common thereto. That Act further provided that any such lots not originally owned or claimed by private individuals or held as town commons, were reserved for the support of schools. By the Act of Congress approved January 27, 1831, the United States relinquished to the inhabitants of Carondelet all the right, title and interest of the United States in and to the town lots in or belonging to the town under the Act of 1812, to be held by the inhabitants in full property according to their several rights therein, to be regulated or disposed of for the use of the inhabitants according to the laws of the State of

Missouri. This Act further provided that all such property reserved for the support of schools should be disposed of or regulated in such manner as might be directed by the Legislature of the State of Missouri. In 1832 Eiler made his survey of Carondelet, and thereafter on February 13, 1833, the General Assembly of Missouri passed an Act providing that the Board of Trustees of the Town of Carondelet should have authority to sell and convey in fee all the vacant and unoccupied lots of ground to which the inhabitants of the town had the legal or equitable title, which were included in Eiler's Survey. On March 4, 1870, the Town of Carondelet became a part of the City of St. Louis. Also by various legislative enactments, the title to all school lands in the City of St. Louis became vested in the Board of Education of the City of St. Louis. It was by virtue of these acts that the trial court decreed that Parcel 3 (B) was owned by the Board of Education rather than by the City itself, either in its own right or as Trustee for the Board of Education.

Pursuant to these legislative enactments, the Trustees of the Town of Carondelet, by separate deeds, conveyed all of the property described as Parcels 1 and 2 in the petition to individual owners, whose titles have now become vested in the plaintiff through an unbroken chain of mesne conveyances.

Block B of Eiler's survey was originally conveyed to one Ignace Bouche by the Trustees of Carondelet, the deed being dated August 11, 1834. The description in that deed, which gives rise to the controversy here, is as follows:

"A lot in Carondelet being Lot or Block 'B', the Northwest and the Southwest fractional quarters containing 300 feet front, and on the Southwest line in depth 130 feet, and on the Northwest line 80 feet in depth. Bounded as follows, to-wit: North by 'R' Street, West by First Water Street, South by 'S' Street, East by a Tow or Water Street."

Due to the fact that Ignace Bouche, the original grantee, reconveyed Block B in two parts, using a different description in each deed, a separate chain of title developed on each part. By a deed to John B. Roy on March 7, 1845, Bouche conveyed the South 25 feet of Block B by a deed describing the property as bounded on the east by a tow, as did the original deed, and all of the subsequent conveyances in the chain of title, with one exception, described the south 25 feet as bounded east by the tow, until the property became vested in the plaintiff's immediate predecessor in title. The balance of Block B (having a front of 275 feet) was conveyed by Ignace Bouche and wife by deed dated April 1, 1848, to Alexander Kayser and Dr. Jas. C. Page. In this deed the property was described as being bounded on the east by the Mississippi River. All subsequent conveyances in the chain of title to this portion of Block B likewise described it as

being bounded on the east by the Mississippi River, or language to that effect. The deed by which the plaintiff acquired title to Block B from plaintiff's immediate grantor described the entire Block B as "running to the Mississippi River."

 All of the opinions of this court on the question are cited by both plaintiff and defendant. They follow: City of St. Louis v. St. Louis Blast Furnace Co., 235 Mo. 1, 138 S. W. 641; St. Louis Public Schools v. Risley, 40 Mo. 356, affirmed 77 U. S. 91, 19 L. Ed. 850; City of St. Louis v. St. Louis, Iron Mountain & Southern Ry. Co., 248 Mo. 10, 154 S. W. 55; Smith v. City of St. Louis, 21 Mo. 36; Smith v. St. Louis Public Schools, 30 Mo. 290; LeBeau v. Gaven, 37 Mo. 557; St. Louis Public Schools v. Schoenthaler's Heirs, 40 Mo. 372, 373; Myers v. City of St. Louis, 82 Mo. 367; Campbell v. The Laclede Gas Company, 84 Mo. 352, 353; City of St. Louis v. Lemp, 93 Mo. 477, 6 S. W. 344; Ellinger v. The Missouri Pacific Railway Company, 112 Mo. 525, 20 S. W. 800; City of St. Louis v. The Missouri Pacific Railway Co., 114 Mo. 13, 21 S. W. 202; Tatum v. City of St. Louis, 125 Mo. 647, 28 S. W. 1002; Sweringen v. City of St. Louis, 151 Mo. 348, 52 S. W. 346; City of St. Louis v. Whitman, 235 Mo. 29, 138 S. W. 648.

These cases considered and ruled questions with reference to the eastern boundary of land located in the City of St. Louis or Carondelet and adjacent to the Mississippi River.

 Plaintiff contends that the deed from Carondelet to Bouche on August 11, 1834, conveyed the fee underlying Tow or Water St.

It should be noted that at that time there was no land east of said street. Absent an express reservation, it is the universal rule that a conveyance of land bounded on a public highway or street carries with it the fee to the center of the highway or street. Furthermore, a description of the land by metes and bounds, giving courses and distances of the boundaries, does not exempt the conveyance from the rule. [Snoddy v. Bolen, 122 Mo. 479, 24 S. W. 142, 25 S. W. 932, 25 S. W. 935; Grant v. Moon, 128 Mo. 43, 30 S. W. 328.] In some jurisdictions, including this state, the rule is extended to include the fee to the whole street, if a dedication of all the land for the street was made by only one grantor. The rule is stated as follows:

"The fee (subject to the easement) remains in those who owned the land at the time of its dedication to public use, and in their successors in title; and if ever the streets and alleys are vacated and their public use abandoned, the original owners, or their grantees, will thereafter hold the same freed from the burden of the former public use. In other words, when there is a termination of the public use for which the dedication was made, there is a reverter of such use to the owners of the servient estate, who at all times held title subject to the right of public use." [Roy F. Stamm Electric Co. v. Hamilton-Brown Shoe Co., 350 Mo. 1178, l. c. 1182, 171 S. W. 2d 580.]

700

The question is considered and so ruled in Neil v. Independent Realty Co., 317 Mo. 1235, 298 S. W. 363; Gifford et al. v. Horton, 103 Pac. 988; Rowe v. James, 128 Pac. 539; Johnson v. Grenell, 81 N. E. 161; Taylor v. Armstrong, 24 Ark. 102; Lamprey v. Am. Hoist & Derrick Co., 266 N. W. 434. The fact that Carondelet had title to the land to be sold for the benefit of the public schools also does not exempt the conveyance from the rule. It follows that under the above stated rule plaintiff has title to the land in question on this appeal.

In the above cited list of riparian cases in this state the question of ownership of the fee underlying a street was not presented, considered and ruled by this court. In the instant case the question was ignored by the trial court.

The judgment is reversed and the cause remanded with directions to quiet title in the plaintiff to the land in question. All concur.