**K.M. SKALECKI and Thomas Dempsey, Respondents,**

v.

**Mark H. SMALL, Jr., Kathleen E. O'Sullivan, Thomas P. O'Sullivan, Sylvia M. Wiedeman and John A. Wiedeman, Appellants,**

v.

**Ronald CARPENTER, Respondent.**

No. 21198

Missouri Court of Appeals, Southern District, Division Two.

Sept. 5, 1997.

James P. Tierney, Lathrop & Gage, L.C., Kansas City, for appellants.

Lisa A. Ghan, Brad G. Bishop, Lowther, Johnson, Joyner, Lowther, Cully & Housley, L.L.C., Springfield, for respondents Skalecki and Dempsey.

Kerry D. Douglas, Douglas, Lynch, Haun & Kirksey, P.C., Bolivar, for respondent Carpenter.

CROW, Judge.

This case returns to this court after a five-year intermission. This court's earlier opinion, *Skalecki v. Small*, 832 S.W.2d 954 (Mo. App. S.D.1992), henceforth referred to as *Skalecki–I*, should be read as a preface to the present opinion.

As explained *infra*, the present appeal must be dismissed because there is no judgment within the meaning of Rule74.01(a).[1]

The dispute is about a parcel of land. *Skalecki–I*, 832 S.W.2d at 954–55. The record indicates the parcel's description is: "Lot # 21, INDIAN POINT, a subdivision ... in Camden County." We henceforth refer to the parcel as Lot 21.

After remand in *Skalecki–I*, Plaintiffs filed a First Amended Petition on October 13, 1992. It named five individuals as defendants. Three of them were the appellants in *Skalecki–I*. 832 S.W.2d at 954. The two new defendants are spouses of prior appellants O'Sullivan and Wiedeman, respectively.

Contrary to Plaintiffs' original petition, which pled Plaintiffs had acquired title to Lot 21 by adverse possession,[2] Plaintiffs' First Amended Petition pled Plaintiffs purchased Lot 21 "at the Camden County Collector's Delinquent Tax Sale on August 22, 1988," and received a "Collector's Deed" on August 28, 1990, which Plaintiffs recorded two days later. The First Amended Petition prayed the trial court to decree that Plaintiffs own Lot 21 in fee simple absolute, and that Defendants have no right, title or interest therein.

Defendants filed an answer to Plaintiffs' First Amended Petition. The answer denied Plaintiffs had any right, title or interest in Lot 21.

Defendants' answer was accompanied by a three-count Counterclaim. Count I, denominated an action to quiet title, averred Defendants own Lot 21 by virtue of certain warranty deeds. Count I prayed the trial court to decree that Defendants own Lot 21 in fee simple absolute, and that Plaintiffs have no right, title or interest therein.

Count II of Defendants' Counterclaim was denominated an action for fraud. It pled, *inter alia*, that the allegations of adverse

---

1. The current version of Rule 74.01(a) took effect January 1, 1995. Vol. 868–869 S.W.2d, Missouri Cases, pp. XXVII–XXIX. References to Rules in this opinion are to Missouri Rules of Civil Procedure (1995).

2. *Skalecki–I*, 832 S.W.2d at 955.

possession in Plaintiffs' original petition were false. Count II further pled that Plaintiffs falsely represented to the trial court that Defendants could not be found for service of Plaintiffs' original petition. According to Count II, the misrepresentations identified in the two preceding sentences were relied upon by the trial court in entering the judgment which this court reversed in *Skalecki–I.* Count II of Defendants' Counterclaim prayed for actual damages and punitive damages.

Count III of Defendants' Counterclaim was denominated an action to set aside the collector's deed upon which Plaintiffs based their First Amended Petition. Count III pled, *inter alia,* that the deed was defective for sundry reasons which we need not list in this opinion.

Defendants subsequently filed a motion for summary judgment on March 28, 1994. The motion prayed the trial court to set aside the collector's deed and to quiet title to Lot 21 in Defendants.

On August 15, 1994, the trial court made and signed a docket entry sustaining Defendants' motion for summary judgment. The entry stated, in part:

"[I]t is ordered, adjudged and decreed that the collector's deed purporting to transfer title herein is set aside and declared void. Defendants are ordered to pay to Plaintiffs the sum of $786.16 (back taxes) and interest thereon at the legal rate from and after 8/22/88 until fully paid."

The entry further provided that Defendants' lawyer should prepare for the court a "formal judgment" reflecting the above ruling.

The record contains an "Order" signed by the trial court and filed September 21, 1994. The Order is consistent with the entry of August 15, 1994; however, the Order does not identify Lot 21 as the property affected by the Order, nor does the Order quiet title in anyone.

On October 13, 1994, Defendants filed a motion for leave to file a pleading designated "Defendants' Amended Counterclaims." The latter document (which accompanied the motion) pled three new claims against Plaintiffs. Those three claims were denominated:

"Count IV: Conspiracy to Defraud"; "Count V: Malicious Prosecution"; "Count VI: Abuse of Process."

Simultaneously with the motion and the pleading described in the preceding paragraph, Defendants filed a motion for leave to file a "Third Party Petition" against Ronald Carpenter.[3] The motion was accompanied by a pleading designated "Third Party Petition." It pled four claims by Plaintiffs against Carpenter. The claims were denominated: "Count I: Fraud"; "Count II: Conspiracy to Defraud"; "Count III: Malicious Prosecution"; "Count IV: Abuse of Process."

Defendants' motions of October 13, 1994 (described in the two preceding paragraphs), lay dormant for some five months. During that period, the trial court, on October 31, 1994, filed an "Order" which pertained to Defendants' motion for summary judgment of March 28, 1994 (the motion the trial court had previously sustained by docket entry August 15, 1994, and again sustained by the Order filed September 21, 1994). The Order of October 31, 1994, contained the description of Lot 21 and proclaimed: "[T]he collector's deed purporting to transfer title to Plaintiffs in [Lot 21] is set aside and declared void." Like the docket entry of August 15, 1994, and the Order of September 21, 1994, the Order of October 31, 1994, did not quiet title to Lot 21 in anyone.

■ We point out the failure to quiet title because, as reported earlier, Plaintiffs' First Amended Petition and Count I of Defendants' Counterclaim were actions to quiet title. In an action to quiet title, the court is required to adjudicate the respective interests of the parties to the action, regardless of who prevails. *Pitts v. Pitts,* 388 S.W.2d 337, 339[1] (Mo.1965). Such declaration should be entered although the plaintiff fails to establish his claim of title and the defendant does not request affirmatively an adjudication of title in him. *Id.* at [2]. Here, of course, each side requested adjudication of title.

On February 9, 1995, Plaintiffs filed a motion for judgment on the pleadings in regard to Count II of Defendants' Counterclaim.

---

**3.** Carpenter is the lawyer who had represented Plaintiffs up to that point in the litigation.

That count, as noted earlier, was denominated an action for fraud.

■ On March 9, 1995, the trial court made a docket entry stating, in pertinent part:

"[T]he Court sustains the motion filed 10/13/94 to amend the pleadings as to Count V and denies the motion as to Counts IV and VI thereof. The Court sustains the motion to join an additional party filed 10/13/94 (amended by interlineation on 2/9/95) as to Count III and denies that motion as to Counts I, II and IV thereof. Court grants motion for judgment on the pleadings filed 2/9/95."

Taking those rulings seriatim, we conclude the first ruling pertained to Defendants' motion of October 13, 1994, which sought leave to file "Defendants' Amended Counterclaims." The latter pleading contained three counts, numbered IV, V and VI. The trial court's ruling granted Defendants leave to file only Count V (denominated "Malicious Prosecution").

We conclude the trial court's second ruling March 9, 1995, pertained to Defendants' motion of October 13, 1994, which sought leave to file the "Third Party Petition" against Carpenter. That petition contained four counts, numbered I, II, III and IV. The trial court's ruling granted Defendants leave to file only Count III (denominated "Malicious Prosecution").

We conclude the trial court's third ruling March 9, 1995, pertained to Plaintiffs' motion of February 9, 1995, for judgment on the pleadings. As explained earlier, that motion pertained to Count II of Defendants' Counterclaim (denominated an action for fraud).

The docket entry of March 9, 1995, bears handwritten initials which appear to be those of the trial court.

After the rulings of March 9, 1995, it seems the parties assumed the only unresolved issues were those raised by (1) Count V of "Defendants' Amended Counterclaims," and (2) Count III of Defendants' "Third Party Petition." An alert reader will recall that each of those counts was denominated a claim for "Malicious Prosecution."

If the parties indeed embraced the notion in the preceding paragraph, they were mistaken.

The entry of March 9, 1995, does not constitute a judgment in favor of Plaintiffs on Count II of Defendants' Counterclaim. The entry states only that the court "grants motion for judgment on the pleadings filed 2/9/95." Without tracking down and examining the motion, one cannot determine the identity of the moving party or the claim on which the moving party sought judgment on the pleadings.

■ Provisions in a judgment should be definite; indefinite provisions are void and unenforceable. *In re Marriage of Brooke*, 773 S.W.2d 496, 498–99[5] (Mo.App. S.D. 1989). The effect of the segment of the entry of March 9, 1995, granting the motion for judgment on the pleadings can be ascertained only by finding and studying the motion to which the entry refers. Only then can one deduce that the trial court intended to adjudicate Count II of Defendants' Counterclaim against them and in favor of Plaintiffs.

Furthermore, and of greater importance, the entry of March 9, 1995, is not denominated a "judgment."

Rule 74.01(a) reads:

" 'Judgment' as used in these rules includes a decree and any order from which an appeal lies. A judgment is rendered when entered. A judgment is entered when a writing signed by the judge and denominated 'judgment' is filed. The judgment may be a separate document or included on the docket sheet of the case."

In *City of St. Louis v. Hughes,* 950 S.W.2d 850 (Mo. banc 1997), number 79514, filed August 19, 1997, the Supreme Court of Missouri applied Rule 74.01(a), saying:

"The requirement that a trial court must 'denominate' its final ruling as a 'judgment' is not a mere formality. It establishes a 'bright line' test as to when a writing is a judgment. . . .

Webster's Third New International Dictionary defines 'denominate' as 'to give a name to: to call by a name.' The Ameri-

can Heritage Dictionary, Second Edition defines 'denominate' as 'to give a name to; designate.' Thus, the written judgment must be signed by the judge and must be designated a 'judgment.' Whether the designation 'judgment' appears as a heading at the top of the writing, within the body of the writing in some other manner, or in the entry on the docket sheet, it must be clear from the writing that the document or entry is being 'called' a 'judgment' by the trial court. Depending upon the text, mere use of the word 'judgment' in the body of the writing or docket entry may not suffice."

950 S.W.2d at 853.

The only place where the word "judgment" appears in the entry of March 9, 1995, is the segment stating the court "grants motion for judgment on the pleadings." It is obvious that the purpose of the word "judgment" in that context is to identify the motion on which the trial court is ruling; the purpose is not to denominate the entry a "judgment."

It is thus evident that the entry of March 9, 1995, does not constitute a judgment on Count II of Defendants' Counterclaim.[4]

■ The next pertinent event was the filing of an answer by Plaintiffs to Count V of "Defendants' Amended Counterclaims." Carpenter subsequently filed an answer to Count III of Defendants' "Third Party Petition."

On May 3, 1996, Plaintiffs filed a motion for summary judgment in their favor on Defendants' claim for "malicious prosecution." We infer Plaintiffs were referring to Count V of "Defendants' Amended Counterclaims." As reported earlier, Count V was denominated "Malicious Prosecution."

That same day (May 3, 1996), Carpenter filed a motion for summary judgment in his favor on Count III of Defendants' "Third Party Petition."

On June 27, 1996, the trial court made and signed a docket entry stating, in pertinent part:

"[T]he Court sustains the motion for summary judgment filed herein on 5/3/96 on behalf of ... Carpenter and the motion for summary judgment filed herein on 5/3/96 on behalf of Plaintiffs K.M. Skalecki and Thomas Dempsey."

Defendants bring this appeal from "Order of June 27, 1996 sustaining motions of summary judgment of appellants [sic]."

Although neither side questions the appealability of that entry, this court must determine appealability *sua sponte. Committee for Educational Equality v. State*, 878 S.W.2d 446, 450[1] (Mo. banc 1994).

The right to appeal is established by statute. *Id.* at [2]. The applicable statute is § 512.020, RSMo 1994. *City of St. Louis*, 950 S.W.2d at 852. Absent one of the exceptions in § 512.020—no such exception applies here—a prerequisite to appellate review is that there be a final judgment. *Id.* If the entry of June 27, 1996, is not a final judgment, this court lacks jurisdiction and must dismiss the appeal. *Id.*

Measured by Rule 74.01(a), quoted earlier, as applied by the Supreme Court of Missouri in the excerpt from *City of St. Louis*, quoted earlier, we hold the entry of June 27, 1996, does not constitute a judgment.

Like the entry of March 9, 1995, the entry of June 27, 1996, is not denominated a "judgment." The only places where the word "judgment" appears in the entry of June 27, 1996, are the segments stating the court sustains "the motion for summary judgment" filed by Carpenter and "the motion for summary judgment" filed by Plaintiffs. Like the entry of March 9, 1995, it is obvious that the purpose of the word "judgment" in the entry of June 27, 1996, is to identify the motions on which the trial court is ruling; the purpose is not to denominate the entry a "judgment."

Furthermore, like the entry of March 9, 1995, the effect of the entry of June 27, 1996,

---

4. Having decided that, we need not consider whether the handwritten initials appearing to be those of the trial court fulfilled the requirement of Rule 74.01(a) that a judgment be signed by the

judge. On that subject, see *Kessinger v. Kessinger*, 935 S.W.2d 347, 349 (Mo.App. S.D.1996), and *In re Marriage of Berger*, 931 S.W.2d 216, 217 (Mo.App. S.D.1996).

cannot be understood unless one locates and studies the motions referred to in the entry. Only then can one deduce that the trial court intended to adjudicate Count III of Defendants' "Third Party Petition" against them and in favor of Carpenter, and that the court intended to adjudicate Count V of "Defendants' Amended Counterclaims" against them and in favor of Plaintiffs.

We thus have a record in which no judgment has been entered on Count II of Defendants' Counterclaim, no judgment has been entered on Count V of "Defendants' Amended Counterclaims," and no judgment has been entered on Count III of Defendants' "Third Party Petition." [5]

Furthermore, as noted earlier, each side prayed the trial court to quiet title to Lot 21.[6] In the record, we find nothing signed by the trial court which purports to adjudicate the respective interests of the parties in Lot 21.

■ For a judgment to be final, and hence appealable, it ordinarily must dispose of all issues between all parties and leave nothing for future determination. *Rea v. Moore*, 891 S.W.2d 874, 874–75[2] (Mo.App. S.D.1995). Although Rule 74.01(b) provides an exception, the exception does not apply here. Accordingly, it appears the absence of an adjudication of the quiet title claims would alone defeat appealability in this case. However, it is unnecessary to decide that issue, as we have already held there is no appealable judgment.

Because there is no appealable judgment, we must dismiss the appeal. *City of St. Louis*, 950 S.W.2d at 852. To ensure that a final and appealable judgment is hereafter entered, the parties should consider the advisability of submitting to the trial court, for signature and filing, one judgment adjudicat-

ing all claims asserted by all parties after *Skalecki–I*.[7]

Appeal dismissed.

MONTGOMERY, C.J., and SHRUM, J., concur.

---

5. Had the entries of March 9, 1995, and June 27, 1996, each independently met the requirements for a judgment, their separation by time (15 months) would not have impaired their status as a judgment. Separate entries can result in a judgment from which an appeal may be taken. *In re Marriage of Short*, 847 S.W.2d 158, 162[5] (Mo.App. S.D.1993); *Kilmer v. Browning*, 806 S.W.2d 75, 78[1] n. 1 (Mo.App. S.D.1991).

6. Plaintiffs' First Amended Petition and Count I of Defendants' Counterclaim.

7. The absence of a unified judgment sent this court on an assiduous trek through the labyrinthine record in an effort to identify the claims which the trial court endeavored to adjudicate.