Claude E. PREWITT, Malcolm E. Prewitt, John R. Prewitt, Elsie Williams, Bernice Jeffiers, Vincel G. Prewitt, and Penny Louise Sauter, Respondents,

v.

Maurice WHITTAKER and Jewell Whittaker, Appellants.

No. 52987.

Supreme Court of Missouri, Division No. 2.

Oct. 14, 1968.

Theo. G. Scott, Buffalo, for respondents.

Earl T. Crawford, Donald L. Barnes, Lamm, Barnett, Crawford & Barnes, Sedalia, for appellants.

PRITCHARD, Commissioner.

In this suit to quiet title to a strip of land 49.5 feet east and west by 163 feet north and south, which is a vacated street, one question presented is whether a grant of abutting lots by description, omitting in mention of the former street, carries the title to the strip to the grantees.

It does not appear in the record who owned the strip of land in question when it was dedicated as a street and when the subdivision by which it ran was platted. The following plat, which was in evidence,

shows the disputed portion of Arcadia Street which was vacated by city ordinance of Warsaw, Missouri, on November 11, 1910:

The Plat of Keeneys Addition to Warsaw was not filed for record and to date no Plat or field notes have been found. Arrangement of the Lots in Block 13 is based on City of Warsaw Ordinance #63 dated November 11, 1910 which vacates Illnois Street in Keeneys Addition North of the South line of Lot 2 Block 13.

The above plat is to the best of my knowledge and belief true and correct.

*Nathan W Brown*

It was stipulated that defendants received a warranty deed to the abutting property, Lots 3, 4, 5 and 6 in Block 13 of Keeney's Addition to the City of Warsaw on July 2, 1952, pursuant to a contract of sale for that same property on June 21, 1952, from plaintiffs' parents (J. E. and Anna Prewitt, both deceased since institution of an original injunction suit by defendants in 1961). J. E. and Anna Prewitt owned and were in possession of land lying immediately to the west of the vacated street, and were also the record owners of the land sold to defendants prior to July 2, 1952. The vacating ordinance of November 11, 1910, provided that the vacated parts of streets and alleys should revert to the owners of the lots adjoining in the same proportion that they were taken from them as provided by law. The land in dispute has not been referred to in conveyances of land to the west or the land to the east thereof.

Plaintiff Claude Edward Prewitt testified: He is an heir and a son of the late J. E. and Anna Prewitt. In 1945 they bought the four lots in Keeney's Addition, and at the same time some property west (in the original town of Warsaw) of abandoned Arcadia Street, from Pete Brady and took possession of all of it, including the abandoned street. On the north end of abandoned Arcadia Street stood a barn, about 20 by 30 feet in size, which was just south of a big post oak tree. After the sale of Lots 3, 4, 5 and 6 in Block 13 to defendants, J. E. Prewitt still had his barn on the abandoned street, kept a cow for a time, and had a good big garden thereon. The garden went all the way east across Arcadia Street and about the south half of it, and was used for eleven years after the sale to defendants, but the garden was cut down in size in 1960 or 1961. A fence was around the garden but was finally taken down by J. E. Prewitt. About 1956 or 1957, J. E. Prewitt took the barn down and gave the roof of it to Claude Edward, without objection by defendant Whittaker or his laying any claim to it. J. E. Prewitt

sawed the barn lumber into firewood and burned it. After 1963, Mr. Whittaker moved in and took possession of the piece of land and put a fence on the west side of it. The portion of the strip which J. E. Prewitt did not have in a garden was kept mowed by him over to defendants' lots, to a ditch which was on Lot 6. This area was also mowed by Claude Edward "after Mr. Whittaker and I think Dad got into it." There was no fence on the property which went north and south except on the east side of the garden fence, which was 2 or 3 feet west of a ditch on defendants' west lots. From 1945 through 1963, J. E. and Anna Prewitt had the barn there (used as a garage), the garden, and mowed the land in question. Defendants' water meter is located at the intersection of Vine Street and abandoned Arcadia Street, "take or leave a foot." Shortly after the sale to defendants there was an iron peg placed close to the northeast corner of abandoned Arcadia Street. It is not there anymore, but Claude Edward was able to ascertain where it was by a buried wire fence.

Defendant Maurice Whittaker testified: He built a house in the fall of 1953 on the property he bought from the Prewitts. The house location was about 100 feet from the east line of Lot 4 (Illinois Street). On August 5, 1961, J. E. Prewitt dug a ditch across the lots west of defendants' house, about 130 feet long, 2 feet wide and 16 or 18 inches deep. The ditch was 20 feet east of the east line of Arcadia Street. Mr. Prewitt was going to take 30 feet more land (apparently this is when the trouble started between them). The Prewitt's garden was located on the south end of Arcadia Street, 8 or 10 rows of potatoes (one year, 1953) and a little patch of sweet corn. He knew the east fence of the garden was about where the east line of Arcadia Street was, and it went clear across (north of) the lot. That fence was removed about two years after defendants' purchase. Defendants had not done anything with reference to the portion of Arcadia Street now in controversy prior to

the institution of the suit. Their water meter is located right at the southeast corner of the disputed land, about 6 or 8 feet inside Lot 5, and the sewer line ran clear across Arcadia Street "cornerways." There was never any disagreement between the Prewitts and defendants about the boundary. The Prewitts burned off the garden, which was grown up in weeds the second year, and another year. Mr. Prewitt started mowing the disputed strip in 1958, and continued to do so until he died in 1963. The barn was on the west side of where Arcadia Street was supposed to be, but not in Arcadia Street at all. Defendants' tax receipts show they paid taxes on part of the NWSW 16–40–22 for 1957, 1958 and 1959, stated thereon to be 1.25 acres. For 1956, 1960, 1961 and 1962 the tax receipts cover Lots 3, 4, 5 and 6 of Block 13. For 1963, 1964 and 1965 the receipts cover the lot and block descriptions "Ex. 80′ x 163′."

■ There is no evidence establishing that Keeney's Addition was prior to November 11, 1910 a part of the corporate limits of the city of Warsaw and that a plat of the addition was duly filed for record and was accepted by the city in accordance with Chapter 445, RSMo 1959, V.A.M.S. There is thus no statutory dedication of streets in Keeney's Addition shown by this record. Since the Prewitts and Brady conveyed by reference to the map description of lots and block numbers, it may be assumed that there were like conveyances by their predecessors in title back to 1910. In the case of Byam v. Kansas City Public Service Co., 328 Mo. 813, 41 S.W.2d 945, 949 [5–9], it is said: "Where there is not a complete statutory dedication, the sale of lots by reference to the plat constitutes a common-law dedication. (Citing cases)." See also Moseley v. Searcy, Mo., 363 S.W.2d 561, 563; Weakley v. State Highway Commission, Mo., 364 S.W.2d 608, 612 [2–4]; and generally, 26 C.J.S. Dedication § 23, p. 440. The city ordinance of November 11, 1910, vacating the portion of Arcadia Street makes reference to Keeney's Addition, so the plat must have been in existence prior to the ordinance. The vacation was effective to free the area of the burden of public use (Brown v. Weare, 348 Mo. 135, 152 S.W. 2d 649, 655 [16], 136 A.L.R. 186), and the street "reverted" to the owners of adjacent lots in proportion as it was taken from them. § 88.673, RSMo 1959, V.A.M.S.; Neil v. Independent Realty Co., 317 Mo. 1235, 298 S.W. 363, 368 [8], 70 A.L.R. 550. It is, of course, not here shown that the person originally making the plat contributed to public use all of the vacated portion of Arcadia Street, so as to cause all thereof (not merely one-half of the street) to "revert." But in view of the disposition of this case, as follows, that missing fact is not important.

■ This state has long followed the general rule that a conveyance of platted lots or blocks adjoining an *existing* street, without mentioning the street in the deed, carries to the grantee the fee simple title to the center of the street (or to the far side if the original grantor contributed all of the street to public use). Snoddy v. Bolen, 122 Mo. 479, 24 S.W. 142, 25 S. W. 932, 934, 24 L.R.A. 507; Thomas v. Hunt, 134 Mo. 392, 35 S.W. 581, 583, 32 L. R.A. 857 (" 'The presumption is that the grantor did not intend to withhold any interest in the street or highway.' 'The presumption may be overcome,' says Judge Black, 'but it must be overcome by something stated in the deed which shows distinctly an intention to withhold an interest in the street.' Snoddy v. Bolen, supra."). In the Snoddy case, loc. cit. 25 S.W. 934, it is said "that the rule stands on the ground of policy, and a presumption raised by the law to carry out the policy," and "The rule is of the utmost importance, and is necessary to prevent afterthought strifes and litigation, like the one now in hand, over detached strips and gores of land, generally of no value to any one save the lot owner." For further statements as to the reason for the rule see 2 A.L.R. 11, and in this state later cases

announcing the general rule as to existing streets are: Neil v. Independent Realty Co., supra, loc. cit. 298 S.W. 369; Kansas City v. Jones Store Co., 325 Mo. 226, 28 S.W.2d 1008, 1015; and American Steel & Wire Co. of New Jersey v. City of St. Louis, 354 Mo. 692, 190 S.W.2d 919 (where although a long-abandoned tow path and accretions thereto from the Mississippi River were involved, the court plainly sustained plaintiff's contention that the original 1834 deed conveyed the fee to it, and the court applied said general rule as to existing streets). See also annotations, 2 A.L.R. 6; 47 A.L.R. 1277; and 49 A.L.R. 2d 984.

Initially the same rule of construction or presumption of grant of the fee simple title in an existing street should apply to the grant of lands adjoining a street which has been vacated, when the street has not been mentioned in the deed. This accords with the view of most of the later cases dealing with the point as collected in 49 A.L.R.2d 1002, § 8, and would prevent detached (and unused) strips and gores of land. But there is an obvious practical difference of reason for the method of rebuttal of the rule of construction or presumption as to an existing street and one which has been vacated. In an existing street the owner has no right to use it as to interfere with the rights of the public. There is a mere possibility that the owner of land adjoining the existing street will succeed to its full unencumbered use by reason of a future vacation. It has little value to him. Thus the rule and policy in the Snoddy case and the American Steel & Wire case become fully applicable: The presumption may be overcome only by something stated in the deed, and the application of this rule would settle the title for intervening years between establishment of a street and vacation thereof. In the case of a conveyance after a street has been vacated, the adjoining owner has full title (under the statute or ordinance) unencumbered by the public use. Since it *may* now be valuable to the owner after vacation, that other reason for

the general rule in the Snoddy case might not apply. The owner of the vacated street should not be bound by the hard and fast rule that the rule of construction or presumption may be rebutted only by something stated in the deed, as by a reservation (which would be better conveyancing practice). Rather, his intention to withhold the vacated area should be permitted to be shown by the surrounding facts and circumstances as will clearly and unequivocally show such intention.

In this case the facts and circumstances clearly show that J. E. and Anna Prewitt had no intention to convey to defendants the previously vacated portion of Arcadia Street adjoining Lots 5 and 6: The Prewitts still owned land to the west of the vacated street; the deed made no mention of the street; and, most importantly, the Prewitts remained in possession of the street, using about the south half of it as a garden, keeping a cow for a time in the barn on its northern part, and mowing the area from 1952 to 1963. (Prewitts' legal title to the unmentioned street when the adjoining land was conveyed to them in 1945 by Pete Brady would depend upon the operation of the presumption of a grant along with abutting lots on both sides of the unmentioned street; there is no evidence of any intention of Brady not to convey the vacated strip as that intention now exists between plaintiffs and defendants.) During all the time the Prewitts were in occupancy of the area the defendants made no claim to or use of the area; made no objection to the barn being torn down; their tax receipts in early years did not include the description of the area, and in later years expressly excluded it; and defendants could not but have known of the use and occupancy of the area by the Prewitts.

■ The state of Washington has taken a view contrary to the rule above announced. In Raleigh-Hayward Co. v. Hull, 167 Wash. 39, 8 P.2d 988, and Turner v.

Davisson, 47 Wash.2d 375, 287 P.2d 726, it is held that the grantee is presumed to have notice of the fact of vacation of the street from public records, and a conveyance describing the property by lot or block does not carry with it any part of the vacated, abutting street, unless specifically included. See also cases listed, 11 C. J.S. Boundaries § 35, p. 589, Note 30. Inflexible application of the Washington rule would cause the same result as herein ruled, but would cause difficulty in the creation of isolated, "detached strips and gores of land," unused by any person having a connection with the vacated areas. For example, if the Prewitts here had not retained their land to the west of the area, but had conveyed it to defendants or others simultaneously, and moved from the area without further use thereof, the title to the vacated area would have become unsettled. The better rule is that where land adjoining a previously vacated area (street, alley, or other land dedicated to public use) is conveyed without mentioning the area, half (or all as the facts show) of the vacated area is presumed to be included in the grant, which presumption is subject to being rebutted by surrounding facts and circumstances clearly and convincingly showing an intention to the contrary.

█ Since the evidence clearly and unequivocally shows an intention not to convey the area by the Prewitts, the further ground found by the trial court that they had been in adverse possession of vacated Arcadia Street for more than ten years need not be considered.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.