985 P.2d 1137

Mert and Carol CARNEY, husband and wife, Plaintiffs–Appellants,

v.

Darrin and Wendy HEINSON, husband and wife, Defendants–Respondents.

No. 24362.

Supreme Court of Idaho,
Boise, May 1999 Term.

Aug. 27, 1999.

Racine, Olson, Nye, Budge & Bailey, Pocatello, for appellants. John A. Bailey, Jr. argued.

Ronald J. Jarman, Pocatello, for respondents. Ronald J. Jarman argued.

TROUT, Chief Justice.

This is an appeal from an order by the district judge denying the appellants, Mert and Carol Carney (the Carneys), an injunction against the construction of a garage by the respondents, Darrin and Wendy Heinson (the Heinsons). The judge also denied the Carneys' later request in their motion for reconsideration that the garage be moved.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In July, 1975, Robert and Phyllis Smuts (the Smuts) purchased Lots No. 13 and No. 1, Block 63 in American Falls, Idaho. In April of 1978, the Smuts requested that the City of American Falls' planning and zoning department close a portion of the alley in Block 63 between Lots No. 1 and No. 13 to enable them to construct a retaining wall. Later that month, the American Falls city council accepted the recommendation of the planning and zoning department to close the alleyway and started proceedings to do so. In May, the city council read Ordinance No. 350 which stated:

> [A]n Ordinance vacating a portion of the alley in Block 63 of the Reclamation Addition to the Townsite of American Falls, Idaho, and providing for the reversion of the vacated portion of said alley to the abutting property owners.

The Ordinance was never recorded with the Power County recorder's office. However, a

second Ordinance, Ordinance 353, enacted by the city council and signed by the Mayor in August of 1978, provided that all property rights of the vacated portion of the alley in Block 63 were to revert to the abutting property owners except that the City of American Falls would retain a perpetual easement for various utility services.

After the alleyway was vacated, the Smuts completed construction of their home on Lot No. 13 and poured a cement driveway on a portion of the vacated alleyway and constructed a cement retaining wall adjacent to the boundary line of Lot No. 1. Because they were the owners of both lots, the Ordinance essentially gave the Smuts ownership of the entire alleyway.

In April, 1989, the Carneys obtained a Special Warranty Deed from Crossland Mortgage Corporation for Lot No. 13. The deed did not contain a description of the one-half of the vacated alleyway adjacent to Lot No. 13; however, the three previous transfers of the property, beginning with the initial transfer of the property by the Smuts, had included a description of one-half of the vacated alleyway adjacent to Lot No. 13. On February 28, 1997, Crossland Mortgage Corporation quitclaimed the one-half of the alleyway abutting Lot 13 to the Carneys. Additionally, on March 17, 1997, the Smuts quitclaimed the entire portion of the vacated alley lying between Lots No. 1 and 13 to the Carneys.

The Heinsons received a Warranty Deed for Lot No. 1 on September 22, 1994. The deed contained no description of the one-half of the alleyway abutting Lot No. 1 and no prior transfer, including the initial transfer of the land from the Smuts, and contained no description or mention of the one-half of the alleyway adjacent to Lot No. 1.

The dispute in question arose when the Heinsons obtained a building permit from the City of American Falls to construct a twenty-four by thirty foot garage on their property. The permit approved construction of the garage within the applicable setback limits, which required sideyard setbacks of 7.5 feet and rearyard setbacks of 7.5 feet where an alley had been platted. At the time the district court proceedings began, the garage had been nearly completed and was situated on the property boundary line of Lot No. 1, immediately adjacent to the vacated alleyway.

The Carneys filed a complaint requesting a temporary restraining order, a permanent injunction against construction of the Heinsons' garage, and title to the entire alleyway. The Carneys asserted that the entire vacated alleyway was their property and as such, the Heinsons were not in compliance with the required setbacks when constructing the garage immediately adjacent to the vacated alleyway. The Carneys also argued that the garage blocked their previous view and that because of the garage, they were having difficulty exiting and entering their driveway. The Carneys claimed ownership of the vacated alleyway under various legal bases. After a court trial on the issues, the district judge issued a Memorandum Decision and Order, Findings of Fact, Conclusions of Law and Judgment on August 20, 1997. The judge determined that the Smuts did not retain ownership of the one-half of the vacated alleyway adjacent to Lot No.1 and, thus, their quitclaim deed to the Carneys dated March 17, 1997 purporting to give the entire vacated alleyway was null and void. The district judge also determined that the Carneys had not obtained title to the land through adverse possession because they had not paid taxes on the property. However, the district judge found that the Carneys had a prescriptive easement over the one-half of the vacated alleyway adjacent to Lot No.1. Accordingly, the judge determined that the Heinsons were in compliance with their building permit and denied the Carneys' request for an injunction.

The Carneys then filed a motion to reconsider on September 2, 1997, arguing that the Smuts' attempt to quitclaim the entire vacated alleyway was valid because Idaho law provides that a vacated alleyway reverts to the owner of the adjacent real estate. Therefore, the Carneys argued, the alleyway reverted to the owners of the adjacent property, not the property itself, and thus the Smuts had retained ownership of the property. The Carneys also argued that they had adversely possessed the entire alleyway be-

cause payment of taxes was not a requirement for adverse possession where no taxes had been assessed. The district judge again held that the Smuts had no ownership in the one-half of the vacated alleyway adjacent to Lot No. 1 when they attempted to quitclaim the land to the Carneys. The judge applied the common law presumption that upon vacation of an alleyway, a subsequent conveyance of the abutting lot includes one-half of the alleyway up to the center line unless there is a clear intention otherwise from the granting instrument or the surrounding circumstances. The judge also determined that the Carneys had not obtained title through adverse possession, this time basing his decision on a lack of exclusivity in possession of the property and a finding that the use was permissive. The judge went on to determine that the Carneys had an implied, not prescriptive, easement over the one-half of the vacated alleyway. Again, the judge held that the construction of the garage was legal. The Heinsons had also filed their own motion for reconsideration requesting attorney fees, which the court denied. The Carneys appeal the district judge's decision.

## II.

## ANALYSIS

**A. The Smuts did not retain ownership of the one-half of the vacated alleyway abutting Lot 1 and therefore, they had no power to convey that portion of the alleyway to the Carneys.**

█ Initially, we note that this Court exercises free review over the district court's conclusions of law. *Marshall v. Blair,* 130 Idaho 675, 679, 946 P.2d 975, 979 (1997).

On appeal, the Carneys argue that the Smuts remained in possession of the one-half of the alleyway adjoining Lot 1 and thus, they were able to convey the alleyway to the Carneys through the quitclaim deed executed on March 17, 1997. The Heinsons urge this Court to adopt the common law presumption that a conveyance of land abutting a vacated alley conveys title to the center of the alleyway, unless the granting instrument or surrounding circumstances illustrate a contrary intent. The district judge relied on the com-

mon law presumption in determining that, at the time of their March 17, 1997 attempt to convey the entire alleyway to the Carneys, the Smuts had no interest in the vacated alleyway adjacent to Lot 1. The district judge determined that "the one-half of the vacated alleyway abutting Lot 1 was conveyed with said Lot by Mr. and Mrs. Smuts even though it was not mentioned in the deed of conveyance." We agree that the one-half of the vacated alleyway adjacent to Lot 1 was conveyed with Lot 1 and affirm the decision of the district judge.

█ In determining ownership of the portion of the vacated alleyway in question, both I.C. § 50–311 and Ordinance 353 support the position that one-half of the vacated alleyway was conveyed with Lot 1 as of the initial transfer of the lot by the Smuts. First, I.C. § 50–311 states that "whenever any street, avenue, alley or lane shall be vacated, the same shall revert to the owner of the adjacent real estate, one-half (½) on each side thereof, or as the city council deems in the best interests of the *adjoining properties* . . . ." (emphasis added). Similarly, Ordinance 353 states that "all property rights in the aforesaid vacated portion of the alley in the aforesaid Block 63, are hereby declared to revert to the abutting property owners . . . ." Although both provisions provide that when an alleyway is vacated it reverts to the abutting property owners, an examination of the statute and the ordinance illustrates that the primary intent of both is to settle ownership of the property after vacation and provide that the newly vacated parcel becomes part of the adjoining property rather than becoming an independent parcel owned by the landowner. Indeed, I.C. § 50–311 makes this clear when it states "whenever any . . . alley . . . shall be vacated, the same shall revert to the owner of the adjacent real estate, one-half (½) on each side thereof, or as the city council deems in the best interests of the *adjoining properties* . . . ." (emphasis added). Thus, the statements in Ordinance 353 and I.C. § 50–311 regarding "property owners" and "owner of the adjacent real estate" simply make clear that title to property naturally goes to an owner and not property, but the vacated

parcel is intended to become part of the adjoining property.

Moreover, we agree with the district judge that the common law presumption should be applied to resolve disputes of this nature. The presumption provides that a conveyance of land abutting a vacated alley conveys title to the center of the alleyway, unless the granting instrument or surrounding circumstances illustrate a contrary intent. In a case very similar to the one at hand, *Prewitt v. Whittaker*, 432 S.W.2d 240 (Mo. 1968), the Missouri Supreme Court found that the presumption had been overcome by surrounding facts and circumstances that clearly and convincingly demonstrated an intention to retain possession of a vacated street by the original owners. The court in *Prewitt* carefully laid out the common law rule as it applies to public ways that have not yet been vacated stating that, "a conveyance of platted lots or blocks adjoining an *existing* street, without mentioning the street in the deed, carries to the grantee the fee simple title to the center of the street." *Id.* at 243 (alteration in original). The presumption may be overcome, but must be overcome by something stated in the deed which shows distinctly an intention to withhold an interest in the street. The court also explained the rationale behind the rule to be the prevention of afterthought litigation over detached strips of land of generally no value to anyone except for the lot owner. *Id.* The court then went on to explain why a similar rule should be applied to cases where the abutting street has been vacated prior to conveyance and not mentioned in the deed. The court stated that the manner in which a property owner can rebut the presumption should be expanded to include surrounding facts and circumstances that clearly and unequivocally show an intention, as well as language in the deed. *Id.* at 244. The court reasoned that "[i]n the case of a conveyance after a street has been vacated, the adjoining owner has full title (under the statute or ordinance) unencumbered by the public use. Since it *may* now be valuable to the owner after vacation, that other reason for the general rule [that strips of detached land should be prevented] might not apply." *Id.* (alteration in original).

In *Prewitt*, the court found that the presumption had been rebutted by surrounding facts and circumstances where a single owner possessed the property abutting both sides of the vacated street. The single owner, after vacation of the street, conveyed various lots abutting the east side of the vacated street. No mention of the vacated street was made in the deeds. The owners of property east of the vacated street then claimed that they obtained title to the easterly one-half of the vacated street. *Id.* at 242. The court ruled that when the original owner had conveyed the lots east of the vacated street, the presumption was that the deed conveyed fee simple title to the center of the street. *Id.* at 244. However, the court found that the presumption had been rebutted because the evidence showed that:

> J.E. and Anna Prewitt [the original owners] had no intention to convey to defendants the previously vacated portion of [the street in question] adjoining [the land conveyed]: The Prewitts still owned land to the west of the vacated street; the deed made no mention of the street; and, most importantly, the Prewitts remained in possession of the street, using about the south half of it as a garden, keeping a cow for a time in the barn on its northern part, and mowing the area from 1952 to 1963 . . . . During all the time the Prewitts were in occupancy of the area the defendants made no claim to or use of the area; made no objection to the barn being torn down; their tax receipts in the early years did not include the description of the area, and in later years expressly excluded it; and defendants could not but have known of the use and occupancy of the area by the Prewitts.

*Id.*

Later courts have also recognized the same rule of law, without explaining the rationale behind the rule or presenting it as clearly as the *Prewitt* court. For example, in *Joseph v. Duran*, 436 So.2d 316 (Fla.Dist.Ct. App.1983), the court held that when lots abutting a vacated alleyway were conveyed by lot and block number only, the owners had conveyed not only title to the lots described in the deed, but also title to the

center line of the alley abutting the lots. *Id.* at 317. Accordingly, when the original owners of lots abutting the easterly one-half of the alley attempted, after conveyance of the lots, to deed that one-half of the alleyway to another person, the quitclaim deed conveying the alleyway was held to be a cloud on the title to the lots abutting the easterly one-half of the alleyway the original owners attempted to convey. *Id.* at 316–17.

Some courts, however, take a contrary approach. For instance, Washington holds that the grantee is presumed to have notice of the fact of vacation of the street from public records, and a conveyance describing the property by lot or block does not carry with it any part of the vacated abutting street, unless specifically included. *Turner v. Davisson,* 47 Wash.2d 375, 287 P.2d 726, 732–33 (1955). Washington follows the presumption, however, if there is nothing in the public records to show vacation. *Id.* at 732. *See also Pyron v. Blanscet,* 218 Ark. 696, 238 S.W.2d 636, 637 (1951); *Torrey v. Pearce,* 92 Ariz. 12, 373 P.2d 9, 13 (1962); *White v. Jefferson,* 110 Minn. 276, 124 N.W. 373, 375–76 (1910).

The Oregon Supreme Court succinctly laid out the two varying approaches to the issue in *Fahey v. City of Bend,* 252 Or. 267, 449 P.2d 438 (1969) stating:

There are cases which hold that the vacated strip does not pass by a conveyance describing only the lot without reference to the street. The reason generally given is that the vacated strip "is then a separate tract of land in no wise appurtenant to the adjoining tract." This is a statement of a conclusion rather than a reason. The vacated strip can be treated as a "separate tract" or as a part of one single tract depending upon what ends are best served. Where the street is in existence at the time of the conveyance, the street portion of the lot is held to pass on the theory that in the absence of an express reservation of the title to the strip it may be assumed that the grantor intends the title to pass. This implication is made on the ground that the grantor would normally have no use for the small narrow strips of land constituting the street por-

tion of his lot. It has also been said that this rule of construction is founded on the policy of discouraging vexatious litigation. *Id.* at 439 (footnotes omitted).

Oregon follows the presumption that the conveyance carries with it the vacated street or alleyway in the absence of the manifestation of a contrary intent. *Id.*

We agree with those jurisdictions following the common law presumption for the following reasons. The presumption, as noted in *Prewitt,* prevents litigation and also prevents "detached strips and gores of land." Moreover, the presumption prevents the situation that the district judge cautioned against, where the original owner of the abutting property is allowed to, after any number of years, convey property that surrounding landowners have put to use. At the same time, the presumption allows for property owners, if they so desire, to retain ownership of any portion of the alleyway and also allows subsequent landowners, such as the Carneys, to prove that the original owners did not intend to convey the property in question—the intent to reserve ownership need only be proven. Indeed, the Smuts were entitled, under the statute, ordinance and presumption, to retain an interest in the land or convey it away to a third person. The problem that arises here is that they did neither. As the *Prewitt* court stated,

The better rule is that where land adjoining a previously vacated area (street, alley, or other land dedicated to public use) is conveyed without mentioning the area, half (or all as the facts show) of the vacated area is presumed to be included in the grant, *which presumption is subject to being rebutted by surrounding facts and circumstances clearly and convincingly showing an intention to the contrary.*

*Prewitt,* 432 S.W.2d at 245 (emphasis added).

■ The next issue then is whether the Carneys have successfully rebutted the presumption. In order to rebut the presumption, there must be evidence that clearly and convincingly shows an intention to the contrary. *Id.* In this case, the evidence in the record is not sufficiently clear and convincing to rebut the presumption. The district judge

determined that the presumption should be applied and that it had not been rebutted, stating that:

> Mr. [a]nd Mrs. Smuts could have, if they had chosen, conveyed all of the vacated alleyway with Lot 13 when they originally conveyed it. They did not, however, and the presumption therefore, is that the remaining, un-conveyed one-half portion of the alleyway was transferred along with Lot 1. Lot 1 was conveyed, although without explicit mention in the deed, with title extending to the center line of the abutting vacated alleyway as there *was no contrary intention evidenced at the time of such conveyance.* Because the one-half of the abutting alleyway was conveyed with Lot 1, Mr. and Mrs. Smuts retained no interest in the alleyway to convey with the Quit-claim Deed of March 17, 1997. (emphasis added).

Additionally, when rejecting the contrary view that the presumption should not apply, the court again mentioned that the Smuts did not intend to retain the property stating, "Mr. and Mrs. Smuts, who appear to have had no intention of retaining any interest in the property...."

The evidence indicates that the Smuts poured a cement driveway on a portion of the vacated alleyway and constructed a cement retaining wall adjacent to the boundary line of Lot 1. Additionally, the Smuts apparently planted grass on the remaining portion of the alleyway. Later, in May of 1979, the Smuts conveyed Lot 1, without mention of the alleyway. The following month, the Smuts conveyed Lot 13 and specifically mentioned the one-half of the alleyway abutting the lot. While the Smuts did submit an affidavit to the court stating that they had intended to convey the entire alleyway with Lot 13, that is contrary to evidence that throughout the past eighteen or more years, Lot 13 was conveyed by deeds only mentioning one-half of the alleyway. Furthermore, there is no evidence whatsoever, that after the property was sold, the Smuts intended to retain an interest in the one-half of the alleyway abutting Lot 1. *Compare Prewitt,* 432 S.W.2d at 244. Indeed, after Lots 1 and 13 were conveyed, there is no evidence that the Smuts

ever returned to the property and they clearly made no effort, if indeed they desired to retain an interest in the property, to prevent the Carneys from later using that portion of the alleyway. Moreover, the order of conveyance indicates that by not conveying the entire alleyway with Lot 13, the Smuts may have assumed that they had already conveyed one-half of the alleyway when they conveyed Lot 1 the previous month and thus, they were unable to convey the entire alleyway with Lot 13.

Because the evidence does not rebut the presumption that one-half of the vacated alley was conveyed with Lot 1, we affirm the district judge. We hold that the conveyance of Lot 1 included the one-half of the vacated alleyway adjacent to Lot 1 and therefore belongs to the Heinsons.

**B.  The Smuts did not establish ownership of the one-half of the vacated alleyway abutting Lot 1 through adverse possession.**

**1.  Standard of Review**

■■■■ On appeal, this Court does not set aside findings of fact, unless they are clearly erroneous. I.R.C.P. 52(a); *Marshall v. Blair,* 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). Thus, if a district judge's findings of fact are supported by substantial and competent, although conflicting, evidence, this Court will not disturb those findings. *Marshall,* 130 Idaho at 679, 946 P.2d at 979. Additionally, this Court gives due regard to the district judge's special opportunity to judge the credibility of witnesses who personally appeared before the judge. I.R.C.P. 52(a); *Marshall,* 130 Idaho at 679, 946 P.2d at 979. The Court will not substitute its view of the facts for the view of the district judge. *Marshall,* 130 Idaho at 679, 946 P.2d at 979. However, unlike the Court's review of the district judge's findings of fact, the Court exercises free review over the district judge's conclusions of law. *Id.*

**2.  Adverse Possession**

■■■■ In order to establish adverse possession by oral claim of title[1] a claiming

---

1.  The Carneys assert that they have adversely possessed under written claim of title. However, there is no written instrument giving them "color of title." Color of title exists when:

party must establish the requirements of adverse possession by clear and satisfactory evidence. *Berg v. Fairman,* 107 Idaho 441, 443, 690 P.2d 896, 898 (1984). Under I.C. §§ 5–209 and 5–210, a claimant must show that there have been five years of continuous actual occupation, which occupation is defined as protection of the claimed property by a substantial enclosure and usual cultivation or improvement. *Id.* The claimant must also show that the possession of disputed property was hostile to that of the real owner and not with the permission of the real owner. *Id.* Last, all taxes which have been levied and assessed upon such land must have been paid. I.C. § 5–210.

■ In this case, the district judge found that the Carneys had not adversely possessed the property in question because they did not maintain exclusive possession of the property and because the possession had been permissive. Specifically, the court found that the previous owner of Lot 1, David C. Heinson (father of the current owner) had submitted an affidavit stating that he mowed the weeds on his one-half of the alley during his period of ownership, which was 1985–1994. David Heinson also testified at trial that he mowed the weeds past the power pole that was located on his property. The court found that the testimony "establishes a shared maintenance of the property which negates the exclusivity element that the Plaintiffs must establish in order to gain title by adverse possession."

Although there is evidence to the contrary indicating that the Carneys built a flower bed on the one-half of the alleyway in question, that they never saw David Heinson mow the weeds in that area, and that in 1994, they expanded their driveway to include the entire alleyway, this Court will not disturb the findings of the district court if they are supported by substantial and competent, although conflicting, evidence. In this case, the evidence was introduced mainly through testimony presented to the district judge sitting without a jury. The district judge is in the best position to determine the credibility of witnesses. Additionally, we do not replace our view of the facts for that of the district judge. The testimony of David Heinson, although contradicted by testimony presented by the Carneys, is sufficient to support the district judge's findings.

■ Regarding the district judge's finding that the use of the alleyway was permissive, the court found that the prior owner, David Heinson, had told Mert Carney that he (Mert) could pour concrete on David Heinson's half of the alley as long as he knew it was David Heinson's property. The court stated that "[b]ased on the testimony of Mr. Heinson, this Court finds that Plaintiffs were given permission by the owner at the time of the one-half portion of the alleyway abutting Defendants' property to use it for a driveway." There is indeed conflicting evidence on this issue. The Carneys assert that David Heinson objected to the placement of the concrete on Lot 1, not the alley, and that after David Heinson objected, the contractor who built the driveway moved the forms so that the driveway was no longer on Lot 1, but was still in the alley. Various witnesses testified that they did not remember David Heinson giving permission to use the alley. This Court gives due regard to the district

---

Any instrument having a grantor and grantee, and containing a description of the lands intended to be conveyed, and apt words for their conveyance, gives color of title to the lands described. Such an instrument purports to be a conveyance of the title, and because it does not, for some reason, have that effect, it passes only color or the semblance of a title.
BLACK'S LAW DICTIONARY 266 (6th ed.1990).
The Carneys base their "color of title" on the various deeds conveying Lot 13 and Ordinance 353. However, the only title the Carneys had during the time period necessary for them to establish the requirements of adverse possession was the deed from Crossland Mortgage Corporation, which did not mention any part of the alleyway. Accordingly, the Carneys cannot assert adverse possession under written instrument because no written instrument, prior to the quitclaim executed to them by the Smuts on March 17, 1997, purported to give them actual title, or color of title, to the disputed one-half of the alleyway. *See Persyn v. Favreau,* 119 Idaho 154, 157, 804 P.2d 327, 330 (Ct.App.1990).

judge's special opportunity to judge the credibility of witnesses who personally appeared before him. As such, we will not disturb the finding that the Carneys' use of the alleyway was permissive because substantial and competent evidence exists to support the district judge's finding.

In sum, although there is indeed conflicting evidence in the record, the findings are supported by substantial and competent evidence. Accordingly, we affirm the district judge, upholding his decision that the Carneys' did not establish adverse possession of the one-half of the vacated alleyway abutting Lot 1.

## C. Neither party is entitled to attorney fees on appeal.

Although the Carneys argue that they are entitled to attorney fees on appeal, they cite no authority and merely state that title was granted to the Heinsons "in the face of extensive factual authority" and that the factual basis of their claims is "so compelling that they should be granted attorney fees on appeal." "This Court will not consider issues cited on appeal that are not supported by propositions of law, authority or argument." *Meisner v. Potlatch Corp.*, 131 Idaho 258, 263, 954 P.2d 676, 681 (1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 56, 142 L.Ed.2d 44 (1998) (citing *Saint Alphonsus Reg'l Med. Ctr. v. Bannon*, 128 Idaho 41, 910 P.2d 155 (1995)). Here, because the Carneys cite no authority or proposition of law, we decline to consider fees as they relate to the Carneys.

 The Heinsons also assert a right to attorney fees on appeal arguing that the appeal merely invites second-guessing as to conflicting evidence and that the law is well-settled. An award of attorney fees is appropriate when the Court is left with an abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Here, the law regarding the conveyance of vacated alleyways and streets had not yet been settled in Idaho. Additionally, evidence existed to challenge the district judge's finding that the property

had not been possessed exclusively or without permission. As such, the Carneys' appeal was not pursued frivolously or without foundation. Accordingly, we will not award the Heinsons attorney fees on appeal.

## III.

## CONCLUSION

We affirm the decision of the district court that the Carneys are not entitled to have title to the one-half of the vacated alleyway abutting Lot 1 quieted in them, rather than the Heinsons. Costs, but not fees, are awarded on appeal to the Heinsons.

Justices SILAK, SCHROEDER, WALTERS and KIDWELL, concur.